## Ex Parte Maurice Cannon.

### No. 7045.  Decided April 18, 1923.

**1.—Habeas Corpus—City Charter and Ordinance—Constitutional Law.**

Where the City of Texarkana passed an ordinance that thereafter it should be unlawful for any male person and any female person to associate together for immoral purposes, etc., which is violative of the fundamental guaranty of both the Federal and State constitutions to every citizen of life, liberty, and property, the same is hearby declared invalid and unconstitutional and relator is discharged.  Following Ex parte McCarver, 39 Texas Crim. Rep., 448, and other cases.

**2.—Same—Unreasonable Ordinance—Constitutional Law.**

Where the obvious purpose of the ordinance is wholesome, but its terms are too broad and many of its sections make penal acts and persons which and who by no construction could be held to be crimes or criminals, and against whose inclusion as such, reason and common sense would revolt, the same is invalid and unconstitutional.

From Bowie County.

Application for writ of habeas corpus asking release from arrest under a city ordinance prohibiting male and female persons from associating together for immoral purposes.

The opinion states the case.

*Rodgers & Rodgers, G. C. Barkman* for Relator.—Cited Zucarro v. State, 197 S. W., 982; Straus v. State, 173 id., 663.

*R. G. Storey,* Assistant Attorney General, and *W. V. Brown,* for the State.—Cited Straus v. State, 173, S. W. 663.

LATTIMORE, JUDGE.—Following conviction in the Corporation Court of the city of Texarkana, Texas, relator sued out a writ of habeas corpus attacking the validity of the ordinance under which conviction was had.  Said ordinance is as follows:

"AN ORDINANCE ENTITLED 'AN ORDINANCE PROHIBITING MALE AND FEMALE PERSONS FROM ASSOCIATING TOGETHER FOR IMMORAL PURPOSES, DEFINING AND STATING WHAT SHALL CONSTITUTE ASSOCIATING TOGETHER FOR IMMORAL PURPOSES, PRESCRIBING PENALTIES, REPEALING ALL ORDINANCES AND PARTS OF ORDINANCES IN CONFLICT HEREWITH AND DECLARING AN EMERGENCY.'

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF TEXARKANA, TEXAS.

SEC. 1. Hereafter it shall be unlawful for any male person and any female person to associate together for immoral purposes.

SEC. 2. 'Associating together for immoral purposes,' as used herein shall mean, and the violation of any one or more of the following subdivisions shall constitute the offense, to-wit.

A.—The riding together, in any automobile, buggy or other vehicle of any female person who resides in a bawdy house, disorderly house, house of prostitution or the red light district, and any male person; provided that it shall not be unlawful for any such female to ride with the driver of a hired taxicab or vehicle.

B.—Any female person who resides in a bawdy house, disorderly house, house of prostitution or in the red light district, and any male person who shall walk the streets together or be in public together shall be deemed guilty of violating this ordinance.

C.—Any male person and female person found together in a house of prostitution, bawdy house or disorderly house shall be deemed guilty of violating this ordinance; provided nothing herein shall prohibit doctors from making calls, during sickness, delivermen actually employed as such, and collectors actually employed as such from going to said places and making deliveries and collections, or peace officers from going to such places in the discharge of their official duties.

D.—Any male person and female person, found together in any bawdy house, disorderly house, rooming house, hotel or any public place or private residence, who have met for the purpose of having unlawful sexual intercourse.

E.—Any male person and female person found together in any bed room of any hotel, rooming house, boarding house, lodging house or inn shall be deemed guilty of violating this ordinance; provided nothing herein shall apply to man and wife, parent and child, brother and sister, and provided further this section shall not apply to those excepted under section 'C.'

F.—Any male person and female person, not man and wife, who register at any hotel, rooming house, lodging house, boarding house or inn as man and wife, or who represent themselves to be man and wife without registering.

G.—The having of unlawful sexual intercourse by any male and female person in any hotel, rooming house, lodging house, boarding house, inn, bawdy house, disorderly house or any public place or private residence.

H.—Any white male person found at the place or residence of any negro woman, who does not come within the exceptions enumerated under section 'C' hereof.

SEC. 3. In prosecutions for violations of the provisions of this ordinance both parties shall be deemed guilty.

SEC. 4. Any person violating any provision of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction in the Corporation Court, shall be fined in any sum not less than Ten ($10.00) nor more than Twenty-five ($25.00) Dollars.''

It hardly seems necessary to analyze the various subdivisions of Sec. 2 of this ordinance to demonstrate that it is violative of the fundamental guarantee of both the Federal and State Constitutions to every citizen of life, liberty and property. The courts have been careful even when restrictive legislation is aimed only at those unfortunate classes whose occupations are deemed so obnoxious to society and to community welfare as to permit proper legislative safeguards,—to not uphold such laws when their fair construction would include others than the class aimed at; and in many cases when even those classes legitimately included in such laws, have been limited beyond what would seem to be a fair exercise of police power, laws have been held unconstitutional. In Milliken v. City Council, 54 Texas, 388, our Supreme Court held unconstitutional an ordinance prohibiting renting house to any prostitute or lewd woman, on the broad ground that when such renting was not for the purpose of carrying on a vocation, it was not a proper exercise of the police power to forbid it; and that no matter how unfortunate or degraded, all human beings were entitled to the protection of the law and the right to hold and own property. In Ex parte McCarver, 39 Texas Crim. Rep. 448, a curfew ordinance forbidding persons under twenty-one years of age from being on the streets of the city of Graham after the ringing of the curfew bell, was held an unreasonable ordinance and an unwarranted invasion of the rights of the citizen, it not only including those who might be out on evil bent but also those who for reasons might be out on business, pleasure or religious errands. In Hechinger v. City of Maysville, 57 S. W. Rep., 619, the Court of Appeals of Kentucky held invalid an ordinance somewhat similar to the one now before us as unreasonable. In Ex parte Smith, 36 S. W. Rep. 628, the Supreme Court of Missouri held unconstitutional an ordinance forbidding association with persons known to be thieves, pickpockets, etc. From that opinion we quote the following:

''This ordinance is now attacked on the ground of its unconstitutionality, in that it invades the right of personal liberty by assuming to forbid that any person should knowingly associate with those who have the reputation of being thieves, etc. And certainly it stands to reason that, if the legislature, either state or municipal, may forbid one to associate with certain classes of persons of unsavory or malodorous reputations, by the same token it may dictate who the associates of any one may be. But if the legislature may dictate who our associatiates may be, then what becomes of the constitutional protection to personal liberty, which Blackstone says 'consists in the power of locomotion, of changing situation, or moving one's person to what-

soever place one's inclination may direct, without imprisonment or restraint, unless by due course of law.' 1 Bl. Comm. 134. Obviously, there is no difference in point of legal principle between a legislative or municipal act which forbids certain association, and one which commands certain association. We deny the power of any legislative body in this country to choose for our citizens whom their associates shall be.''

Turning for a moment to the subdivisions of Sec. 2 of the ordinance under consideration quoted above, we notice that many of said subdivisions if applied would make penal all male persons who without knowledge of their character gave transportation to any person who resided in a bawdy house; would also penalize the father, brother or near relative of such inmate who might visit her at such place, no matter how innocent such visit, or whether its purpose was to induce her to leave the place, or was caused by sickness or what not; would penalize the minister, salvation army or other rescue worker who might go to such place of woe with the purest purpose and best intent possible; would prevent all those male persons whose wives and mother had negro washerwomen or servants from going to their residences on any kind of errand or mission, however, clean or lawful, unless such male person was a doctor, a deliveryman, a collector or a peace officer.

The obvious purpose of the ordinance is wholesome, but its terms are too broad and many of its sections make penal acts and persons which and who by no construction could be held to be crimes or criminals. Many situations could be instanced where men might go to the house of ill-fame with the best possible motives, or be temporarily thrown with fallen women with or without knowledge of their character and totally without evil purpose, and of men from business, charitable or religious purposes might be led to be at said places or with said people. We would seriously doubt the validity of any law a reasonable construction of whose terms would make criminal those persons and things against whose inclusion as such reason and common sense would revolt. Further argument would seem needless.

The ordinance in question being unconstitutional, it would follow that the arrest and conviction of relator was without authority of law, and his discharge will be ordered.

*Relator discharged.*