Ex Parte A. M. Smythe.

No. 13469.   Delivered May 14, 1930.
Reported in 28 S. W. (2d) 161.

The opinion states the case.

*Davidson, Blalock & Blalock* of Marshall, for appellant.

*William Caven,* City Atty., of Marshall, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

MARTIN, JUDGE.—Relator was charged with violating an ordinance of the City of Marshall.   Being arrested and confined in the city jail under said charge, he sued out a writ of habeas corpus and upon a hearing, was remanded, from which order he appeals to this Court.

Relator was arrested under the following complaint:

"I, E. H. Whitehurst do solemnly swear that I have good reason to believe, and do believe, that A. M. Smythe on or about the 29th day of January, A. D. 1930 in the territorial limits of the City of Marshall in Harrison County, Texas, and before the making and filing of this complaint, was then and there in the business and trade of lending money and making collections in connection therewith, and did on said 29th day of January, A. D. 1930 on Bolivar Street, transact a part of such business by attempting to collect money from Manuel Goodspeed, against the peace and dignity of the State."

The ordinance of the City of Marshall defining the offense for which appellant was arrested reads as follows:

"Section 1.

Hereafter it shall be unlawful for any person or persons who are engaged in the business or trade of lending money and mak-

ing collections in connection therewith to transact any part of such business on the streets of the city of Marshall."

On the habeas corpus hearing relator testified in substance that he was employed by the Hall Investment Company, which was engaged in making small loans and collections; that on the date of the alleged offense one Manuel Goodspeed was indebted to his employer in a small sum of money and that he stopped and asked said Manuel Goodspeed when he was coming to the office to pay off said note. He reminded him that it was past due and urged him to take care of it promptly.

Appellant contends the above ordinance is unconstitutional. The substance of the State's contention is that the City of Marshall under its charter has absolute right of control over all of its streets and the right to prohibit same from being used by any citizen or class of citizens for the conduct of any kind or character of business. Under the general police power inherent in sovereignty there can be no doubt of its right to reasonably control and regulate such matters. The general rule has been stated as follows:

"The police power of the state extends only to such measures as are reasonable, and the general rule is that all police regulations must be reasonable under all circumstances. In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object falling within the domain of the police power. A statute to be within this power must be reasonable in its operation upon the persons whom it affects, and not unduly oppressive. The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable or arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power." 6 R. C. L., Constitutional Law, Paragraph 226.

We take the following from the case of H. & T. C. Ry. Co. v. Dallas, 98 Texas 396:

"The power is not an arbitrary one, but has its limitations. It is commensurate with, but does not exceed the duty to provide for the real needs of the people in their health, safety, comfort and convenience, as consistently as may be with private property rights. As those needs are extensive, various and indefinite, the power to deal with them is likewise broad, indefinite and impracticable of precise definition or limitation."

It has been further stated:

"In order to sustain legislative interference by virtue of the police power, under either a statute or a municipal ordinance, it is necessary that the act should have some reasonable relation to the subjects included in such power, and the law must tend, in a degree that is perceptible and clear, toward the preservation of the public welfare, or toward the prevention of some offense or manifest evil, or to the furtherance of some object within the scope of the police power. * * * One application of the familiar rule that the validity of an act is to be determined by its practical operation and effect and not by its title or declared purpose is that a constitutional right cannot be abridged by legislation under the guise of police regulation; since the legislature has no power, under the guise of police regulations, to invade arbitrarily the personal rights and personal liberty of the individual citizen, or arbitrarily to interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations, or to invade property rights." 6 R. C. L., Constitutional Law, Paragraph 227. See also 6 R. C. L., Constitutional Law, Paragraph 228.

Sections 3 and 19 of Art. 1 of the State Constitution read as follows:

"Sec. 3. All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

"Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Measured by the above we think it clear that the ordinance in question is unconstitutional. Regardless of its form, in its practical operation it arbitrarily discriminates between persons similarly situated who do the same identical acts. To illustrate: A is a banker and B is a grocery merchant in the town of Marshall. The banker loans C money to buy groceries, taking his note, and B on the same day takes C's note for groceries already sold him. Each has a lien on separate chattels as security. A cannot mention the matter of payment to C on the streets of Marshall in a decorous and orderly manner without violating this ordinance, while B can talk to him when and where he pleases with impunity. If C sells or disposes of such property, A apparently would be helpless to preserve his security if in so doing he had "to transact any part of such business on the streets of the city of Marshall." B is under no such restraint.

That such an abridgment of A's rights might result in the entire loss of his debt and for that reason amount to confiscation of his property seems plain and this, although he is given the right by Art. 5496 of the civil statute to repossess himself of the mortgaged chattels under the conditions therein named, which would seem to necessarily include the right to transact any part of such business on the streets which was a necessary incident of his act in taking possession of same.

Moreover, looking past the form of this ordinance to its substance and its practical operation, as we must do in determining its constitutionality, it is plainly arbitrary and unreasonable. It unreasonably abridges the right of contract and the right of citizens to use the streets in a lawful manner. Illustrations could be multiplied to show this. A creditor could not even go with a prospective debtor upon the streets to look at security and discuss with him such matter, nor could he even quietly suggest to him that his note was about to become due, although his original right to contract the debt would seem to necessarily imply the right to collect by all lawful means. That a breach of the peace is no more likely to occur from the act of A than it is from that of B in attempting to collect his debt in the illustration above and that no interest inimical to the public welfare is involved in such transaction is, we think, obvious. It is no more the "due course of the law of the land" for the impersonal multitude to impose its arbitrary and capricious will upon the citizen to the injury of his property or his right of contract than it is for the personal monarch to do so. To curb such attempts constitutional guarantees have been adopted. Among these are the two mentioned above. It is discriminatory and is not by "due course of the law of the land" to so abridge the right of the peaceful and orderly use of the streets by citizens as to amount in effect to the abridgment or perhaps to the destruction of property rights. The following authorities are deemed analogous: Juhan v. State, 86 Tex. Crim. Rep. 71; City of St. Louis v. Gloner, 109 S. W. 30; Ex parte Cannon, 250 S. W. 429; Ex parte McGarver, 46 S. W. 936; Milliken v. City Council, 54 Tex. 388; Hechinger v. City of Maysville, 57 S. W. 619; City of Georgetown v. Hambrick, 104 S. W. 997; Ex parte Epperson, 134 S. W. 685.

It is always difficult to demonstrate the obvious. A discussion of this ordinance could not to the writer's mind make clearer the invalidity than already appears plainly from a mere statement of its terms.

Because we think the ordinance unconstitutional in the respects discussed, the judgment of the trial court is reversed and relator is ordered discharged.

*Reversed and discharged.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.