RAY WILLIAMS V. THE STATE.

No. 22550. Delivered December 8, 1943.

432

The opinion states the case.

*Sawnie B. Smith,* of Edinburg, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

This prosecution arose under, and appellant was convicted of a violation of what is known and will be hereinafter referred to as the Pink Bollworm Act, the same being Chapter 3, Title 4, Revised Civil Statutes of Texas, 1925, as amended by Chapter 42, Acts of the Regular Session of the 41st Legislature, 1929, and appearing as Arts. 68 to 82, both inclusive, of Vernon's Annotated Revised Civil Statutes, and Article 1034, Penal Code.

The effect of the charge against appellant was that, during the year 1942, he was in the possession and control of twenty acres of land in Hidalgo County, upon which he cultivated and grew cotton and cottonstalks; that the land was situated within the confines of a pink bollworm regulated zone which had theretofore been, by the proclamation of the Governor of this State, designated for pink bollworm eradication and control, the enforcement of which proclamation had been provided by the quarantine proclamation and order of the Commissioner of Agriculture of this State; that the proclamations and orders mentioned required, among other things, that all growing cottonstalks in the regulated zone be destroyed, by plowing or other approved method, not later than October 1st of each year; that appellant knowingly permitted growing cottonstalks to remain upon his land after the 1st day of October, 1942, in violation of and contrary to the provisions of the proclamation of the Governor and the orders of the Commissioner of Agriculture, without having a permit from the Commissioner of Agriculture of this State to have the growing cottonstalks on the land after the date alleged.

The gist of the offense thus charged against appellant is his failure to comply with an order promulgated by the Commissioner of Agriculture of this State, and for which he was convicted and his punishment assessed at a fine of $50.00.

The provisions of the Act under which this prosecution was brought and conviction obtained are assailed as being invalid and in violation of constitutional provisions. The attack thereon may be summarized as follows:

(a) The Act is an unwarranted delegation of power by the Legislature of this State and is prohibited by Article II, Section 1, of the Constitution of this State.

(b) The Act is violative of the due process clauses of our State and Federal Constitutions (Art. I, Sec. 19, Constitution of Texas, and 14th Amendment to the Constitution of the United States) and is contrary to the provisions of Article 3 of the Penal Code of this State.

(c) The Act places in the hands of the Commissioner of Agriculture of this State the power to suspend laws, contrary to the provisions of Art. I, Sec. 28, Constitution of Texas.

The term "cotton," as defined in the Act, included cottonstalks; and, where that term is employed here, it should be construed as including cottonstalks.

434

Although features of the Act have heretofore been before the courts of this State for construction (Kilpatrick v. Compensation Claim Board, 259 S. W. 164, where the legislative history of the Act is set forth), the feature of the Act here under consideration is a matter of first impression in this State.

In so far as the questions now before us for consideration are concerned, the practical and working effect of the Act is that the Legislature, for the purpose of eradicating the pink bollworm— which it found to be a public nuisance and menace to the cotton industry of this State, the eradication of which constituted a public necessity—created an administrative board, known as the Pink Bollworm Commission, hereinafter referred to as the Commission.

This Commission was authorized and empowered, after notice and hearing, to establish zones or areas in this state within which the growing of cotton would be prohibited altogether, or would be limited. The Commission, upon completion of the hearing, made its recommendation to the Governor of this State. In the event such recommendation was that cotton might be grown in certain areas to be known as regulated zones, under rules and regulations deemed adequate to prevent the spread of the pink bollworm, it became the mandatory duty of the Governor of this State to issue his proclamation proclaiming the area designated to be a regulated zone. In this connection, note is taken of the fact that, upon the issuance of the proclamation, it was thereafter unlawful "to grow cotton within such area as may be recommended by the Pink Bollworm Commission, except under such rules and regulations as the Commissioner of Agriculture shall promulgate." (Art. 71, R. C. S.) ;** and, also, in which regulated zone, it was thereafter unlawful "to plant, cultivate and market cotton except under such rules and regulations as shall be promulgated therefor by the Commissioner of Agriculture, - - - - - - - - - -." (Art. 74, R. C. S.) ***

---

**"Art. 71. Investigation and recommendation.

"If the Commissioner of Agriculture determines, through his cooperation with the Secretary of Agriculture of the United States, that the pink bollworm exists outside of Texas but adjacent to the Texas border, he shall certify that fact to the Governor, who shall thereupon cause the convening of the Pink Bollworm Commission appointed as hereinafter provided for, which commission shall give notice of, and hold a hearing in the manner hereinafter provided at some central and easily accessible point in the county or counties in this State along the boundary adjacent to such infestation, and investigate into the danger to the cotton industry of Texas from such infestation adjacent to the Texas border and make such recommendation to the Governor as they deem sufficient to the protection of the cotton industry of the State. Should this report express the conclusion that it is dangerous to the cotton industry of Texas that cotton

The Commissioner of Agriculture played an important part in the proceedings, especially in relation to the hearing and report of the Commission. His relation thereto was in the nature of investigator and prosecutor in that he made a preliminary survey of the areas which might be infected, or in danger of infection, with pink bollworm. The owners of the land in the

---

be grown in this State along the boundary adjacent to such infestation, the Governor shall thereupon proclaim such area as may be set out in said report a non-cotton zone, in which it shall be unlawful to plant, cultivate or grow any cotton for such period as the proclamation may specify; and if such report indicates that it will be safe to grow cotton under rules and regulations within such zone adjacent to the infestation outside of Texas, the Governor shall thereupon issue his proclamation declaring it unlawful to grow cotton within such area as may be recommended by the Pink Bollworm Commission, except under such rules and regulations as the Commissioner of Agriculture shall promulgate. Should the report of such commission indicate that it may be dangerous to the cotton industry of this State to allow the free movement of contaminated material from such infested territory into this State, the Governor shall thereupon proclaim a quarantine against such infested territory, and thereafter it shall be unlawful to import into Texas from such quarantined territory any thing or substance liable to be contaminated with pink bollworm, and it shall be the duty of the Commissioner of Agriculture to maintain a rigid inspection of articles liable to be contaminated which are being carried from such quarantined territory into the State of Texas. Before recommending the establishment or continuance in any county in this State bounded by an international boundary line, or a noncotton zone, under this or any other article of this chapter, the Pink Bollworm Commission shall give careful consideration to the conditions existing, or likely to exist, on the non-Texas side of said boundary line, and the evidence concerning such conditions shall be such as to reasonably show that the establishment of a non-cotton zone in said county will effectively protect the cotton industry of Texas against the further spread of the infestation."

\*\*\*" Art. 74. Examination of area.

"Whenever the Commissioner of Agriculture shall deem it necessary to the protection of the cotton industry of Texas that the growing of cotton within any area of the State, except as provided for in the preceding article hereof, be placed under supervision, or that cotton growing be prohibited as a means of aiding in the control and eradication of the pink bollworm, he shall cause to be made a thorough examination of such area by a competent and experienced etomologist, who shall, after going upon the premises and after making an examination in person, report the result thereof to the Commissioner of Agriculture. Should this report express the conclusion that pink boll worms exist in such numbers as to constitute a serious menace within the territory under investigation, the Commissioner of Agriculture shall certify this report ot the Governor, who shall cause the Pink Boll Worm Commission hereinafter, provided for, to hold a hearing at some central and easily accessible point within the area under investigation; due notice of the time and place of such hearing shall be published in some newspaper in or near the county or counties under investigation, at least ten days before such hearing. The Commissioner of Agriculture shall present to the Commission a statement setting forth the following facts:

"1. The name of the entomologist making the examination on behalf of the State Department of Agriculture.

"2. The date when such examination was made.

"3. The locality where the pink boll worm is alleged to exist.

"4. That the inspector invited the owner of the land, or his agent, or representative, to accompany him on the inspection trip, and that the owner, or his representative, accompanied him, or declined to do so.

"5. Any other information deemed necessary to the Commission for the discharge of its duties under the provisions of this Chapter.

areas under investigation were contacted, after which the Commissioner made his report to the Governor, who ordered the convening of the Commission for a hearing thereon. At the hearing, the Commissioner of Agriculture presented his findings to the Commission.

Art. 1034, P. C ., undertook to make the violation of any proclamation, rule, or regulation promulgated by, or authorized to be issued under, the Act a crime punishable by a fine.

---

"Such statement shall be verified by oath of the person making the same and shall be filed and preserved in the office of the Commissioner of Agriculture and be open to the inspection of the public. Said Pink Boll Worm Commission shall make a report to the Governor immediately after the hearing. Should this report and recommendation be for the prevention of the planting of cotton in any area and for the establishment of a non-cotton zone, such recommendation shall specify the area to be embraced in the proposed non-cotton zone. Upon receipt of this report, the Governor shall declare the growing of cotton within such area as may be recommended by the Pink Boll Worm Commission a public menace, and thereafter it shall be unlawful to plant, cultivate or grow cotton, or to allow cotton to grow within such zone, such proclamation of the Governor to remain in effect until the Pink Boll Worm Commission, herein provided for, shall have certified that the condition of menace no longer exists. In the event of the establishment of any non-cotton zone authorized by this Chapter, all persons prevented from producing cotton in the non-cotton zones shall be entitled to receive compensation from the State in the measure of the actual and necessary losses sustained thereby. In all regulated or restricted areas now established or that may hereafter be established, all persons, firms or corporations required to comply with said regulations or restrictions imposed upon them by law or any constituted authority shall be entitled to receive compensation for the actual losses sustained and for all actual expenses incurred by reason of said restrictions or regulations. From and after July 1, 1929, the State shall own or lease and operate all fumigation and sterilization plants and shall operate same without cost to the cotton grower or gin, compress or mill owner. The Compensation Claim Board, herein provided for, shall have full power and authority to determine the amount of compensation to such persons, firms or corporations. In determining the actual and necessary losses, the Compensation Claim Board shall take into consideration the value of the average yield of cotton and other crops second in economic importance thereto in that vicinity; the total amount of land planted to crops during the year for which compensation is claimed; the percentage of such land customarily planted in cotton in that vicinity, and such other factors as they deem essential. The words 'cultivated crops' as used above shall not be construed to include any small grain crops, hay or pasture crops which are not cultivated during the growing season. No person shall be entitled to compensation who does not in good faith obey the proclamation of the Governor establishing such non-cotton or regulated zone. Should the report of the Pink Boll Worm Commission express the conclusion that it will not be dangerous to the cotton industry of Texas to permit the growing of cotton within such district under such rules and regulations as it shall be deemed adequate to prevent the spread of the pink boll worm, the Governor shall proclaim such area as may be set out in the report of the Pink Boll Worm Commission a regulated zone, in which it shall be unlawful to plant, cultivate and market cotton except under such rules and regulatins as shall be promulgated therefor by the Commissioner of Agriculture, which may include the planting of seed from non-infested territory, ginning at designated gins, milling or disinfecting of all seed products within such zone marketing, cleaning of fields, and such other rules as may be found necessary; provided that no ginner shall be authorized to gin cotton from regulated zones unless he shall disinfect all seed under such rules as the Commissioner of Agriculture shall prescribe. Such proclamation of the Governor, establishing such regulated zone shall remain in effect until the Pink Boll Worm Commission shall have certified that the menace no longer exists."

The Act proper, that is outside of the penalty provisions of Art. 1034, P. C., does not make the violation of the rules and regulations promulgated by the Commissioner of Agriculture a violation of law.

The unlawful act created by the Legislature is the growing of cotton in either a prohibited or a regulated zone. As to the first, there is no defense provided in the Act. As to the other, it is a defense if the cotton was grown in accordance with rules and regulations prescribed by the Commissioner of Agriculture.

A determination of the questions here presented for review, as well as of the validity of the Act, requires that the distinction pointed out—that is, the act made unlawful—be kept in mind, as we conceive such to be the offense denominated by the Act, and controlling here.

Every State possesses an attribute of sovereignty, not granted or derived by or under any written constitution, known as its police power, by which the lawmaking bodies of each State pass laws to protect the peace, health, happiness, and general welfare of society, and of the people as a whole. The validity of legislation passed as an exercise of police power depends in a large measure only upon whether the regulation is reasonable or arbitrary and is really designed to accomplish a purpose properly falling within the scope of police power. Ex parte Smythe, 116 Tex. Cr. R. 146, 28 S. W. (2d) 161; 11 Am. Jur. 1073, and authorities there listed.

It follows that legislation which is necessary or appropriate to protect the general welfare of the people, and that is reasonable in its operation and effect, is a valid exercise by the Legislature of its police power.

Testing the validity of the Act and the part thereof before us, in the light of these rules, we find:

It is a matter of common knowledge, and we therefore judicially know: that, at the time of the passage of the Act, Texas was, and is now, the largest cotton-producing State of the American Union; that only a small percentage of the cotton produced was consumed within this State; that cotton was our chief source of income; that the cotton industry, as a whole, was so related to the economic welfare—not only of the State but of the people generally—that its destruction would have been a major calamity, reducing the State to an economic chaos.

The preservation and protection of that industry from destruction or serious injury was a subject properly within the police power of the Legislature of this State. The Legislature was therefore empowered to pass all such reasonable legislation to protect the industry.

Being a subject, then, within the scope of police power, the question arising is whether the Act. so passed violated the provisions of the Constitution mentioned, prohibiting a delegation of legislative power to make laws. This question arises primarily as a result of, and out of, the powers conferred upon the Pink Bollworm Commission, the Governor, and the Commissioner of Agriculture, and especially in so far as same creates a crime or makes an offense against the penal law of this State.

Article II, Section 1, of our State Constitution precludes one branch of our government from delegating to another the power and authority conferred upon it by the Constitution.

The question of this delegation of authority has been much before the courts, and especially is that true in recent years by the enlarged powers conferred upon administrative boards and tribunals. The generally accepted rule governing such matters now appears to be that a legislative body may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the power to fill up the details, by prescribing rules and regulations to promote the purpose and spirit of the legislation and to carry it into effect. In such cases, the action of the Legislature in giving such rules and regulations the force of laws does not violate the constitutional inhibition against delegating the legislative function. The rule finds support in Field (Marshall) & Co. v. Clark, 143 U. S. 649, 36 L. Ed. 294, 12 Sup. Ct. Rep. 495, wherein the Supreme Court said: "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and, must, therefore, be a subject of inquiry and determination outside of the halls of legislation." See also: United States v. Grimaud, 220 U. S. 506, 55 L . Ed. 563, 31 Sup. St. Rep. 480; United States v. Shreveport Grain & Elevator Co., 287 U. S. 77, 77 L. Ed. 175, 53 Sup. Ct. 42; Panama Refining Co. v. Ryan, 293 U. S. 388, 55 Sup. Ct. Rep. 241; 79 L. Ed. 446; Ex parte Leslie, 87 Tex. Cr. R. 476, 223

S. W. 227; Carter v. State, 135 Tex. Cr. R. 457, 116 S. W. (2d) 371; Smith v. State, 74 Tex. Cr. R. 232, 168 S. W. 522; Tuttle v. Wood, 35 S. W. (2d) 1061; Britton v. Smith, 82 S. W. (2d) 1065; Housing Authority of City of Dallas v. Higginbotham, 143 S. W. (2d) 79, 135 Tex. 158, 130 A. L. R. 1053; and authorities from other jurisdictions, collated under 79 L. Ed. 490.

In the Act before us, the Legislature was endeavoring to protect the cotton industry of this State from injury or destruction by the pink bollworm. Such was the primary, as well'as the ultimate, purpose. The nature and extent of the menace, the areas infested or that stood in danger of infestation, together with a means to isolate and to prevent a spread of the menace, were facts necessary to be ascertained, in order that the purpose and intent of the Legislature might be carried out. Such facts, of their very nature, if not impossible of ascertainment by the Legislature, in its legislative capacity, were extremely difficult, involving extended and special investigation.

That it was within the power of the Legislature to create the Pink Bollworm Commission to ascertain such facts, to make recommendations thereon, and, thereby, to fill in the details, we have no doubt. The Act, in that particular, was not a delegation by the Legislature of its lawmaking power. In this connection, it must be remembered that it was not the Commission that made it unlawful to grow cotton in the areas covered by its recommendations. The Legislature itself did that and provided the punishment to be applied for a violation thereof.

This brings us to a consideration of, what occurs to us to be, the pivotal question, which is: Is the Act violative of due process and contrary to the provisions of Article 3 of the Penal Code?

In this respect, the contention is that the Act makes no provision for prior notice of the Commission's recommendations creating the areas in which it is unlawful to grow cotton. Article 3 of our Penal Code is a positive declaration by the Legislature of this State that, before an act or omission constitutes a penal offense, such must be made so by the written law of this State. A reasonable, as well as necessary, construction to be given that statute is that, for an act to constitute a crime, it must be one by which a person is able to know in advance, with some degree of certainty at least, whether or not it is criminal.

The wisdom of the statute is readily apparent, for no person should be called upon to answer a criminal accusation for an act, which he did not, prior to the commission thereof, have a reasonable opportunity of knowing was unlawful. Such is a meaning of due process, as guaranteed under the State and Federal Constitutions.

The rules stated were expressly recognized by this court in Ex parte Leslie, supra. We steadfastly adhere thereto.

So, the question here to be determined is whether the Act falls within the condemnation of due process, because of and for the want of notice as to the Commission's finding designating the area in which it was made unlawful to grow cotton. Upon this subject, the Act provides for a constructive notice by publication of the hearings conducted and to be conducted by the Commission and of the area or areas under investigation and likely to be affected by the findings of the Commission. The Act also contemplates actual notice to a landowner to be made and given by the Commissioner of Agriculture in his investigation prior to the hearing before the Commission (Art. 74, R. C. S.).

On the other hand, the Act contains no express provision for notice as to the findings or recommendations of the Commission or of the areas affected in its report; nor does the Act require that notice be given of the Governor's proclamation issued upon the report of the Commission, or of the rules and regulations of the Commissioner of Agriculture authorized to be promulgated by him.

What prior notice, then, did appellant have that the act here charged against him was unlawful? He is charged with notice, both actual and constructive, that the Pink Bollworm Commission was to conduct a hearing to determine whether his land was in an area infested with, or in danger of infestation by, the pink bollworm. He is charged with notice that the Commission was empowered by the Legislature, as a result of that hearing, to recommend that he be not allowed to grow cotton upon his land and that the growing of cotton thereon would constitute a violation of law, such notice having been furnished as a result of the personal interview of the Commissioner of Agriculture and by publication, in a newspaper, for ten days, in the county where the land was situated. Appellant, as a result of such notice, was, of necessity, a party to the proceedings before the Commission, and was placed under the burden

not only of attending the hearing but also of knowing or ascertaining the Commission's conclusions after the hearing. It appears, therefore, that the Act provides for reasonable notice of the report of the Commission, as well as of the areas included therein, to all persons affected or likely to be affected thereby.

Does the Act provide for reasonable notice of the Governor's proclamation putting into effect the recommendations of the Commission?

As to this, the record reflects that the Governor's proclamation was duly and regularly filed, by the Governor, in the office of the Secretary of State, long prior to the year 1942, and that appellant's land was in the regulated zone therein set out. A proclamation of the Chief Executive of this State, when duly promulgated and filed, occupies a position comparable to laws regularly passed by the Legislature. That a proclamation by the Governor, of and within itself, is notice is further manifested by the fact that the courts are required to take, and do take judicial notice of the contents thereof. Missouri, K & T R. Co. v. McIlhaney, 60 Tex. Civ. App. 598, 129 S. W. 153; and 20 Am. Jur. 67.

Under the facts detailed, construed in the light of the rules stated, we conclude that the Act provided appellant with reasonable notice that, prior to the year 1942, it was unlawful to grow cotton upon his land. As so construed, the Act does not come within the condemnation of due process as contended. As against such contention, the Act is valid.

The conclusion reached is not at variance with that expressed in Ex parte Leslie, supra. In that case, the unlawful act charged lay in the violation of orders of the Live Stock Sanitary Commission, or its representatives, of which the accused was furnished no prior notice or opportunity of knowing the contents thereof.

The next question presented is: Does the Act authorize the Commissioner of Agriculture to suspend the law? This question arises by reason of the provisions of the Act which authorize the Commissioner to promulgate rules and regulations constituting exceptions to the Act making it unlawful to grow cotton in regulated zones.

We think this question has been determined by the Supreme Court of the United States, in the case of Sproles v. Binford,

76 L. Ed. 1167, 286 U. S. 374, 52 Sup. Ct. Rep. 581. In that case, the validity of certain features of the Motor Carrier Act of this State was under attack, wherein it was provided, among other things, that it was unlawful to transport, over the highways of this State, a load in excess of a fixed weight. The Highway Commission was authorized to grant exceptions to that provision of the Act and to grant transportation of loads in excess of the maximum weight specified. This feature of the Motor Carrier Act, that is, the exceptions mentioned, it was contended, authorized the Highway Commission to suspend the law as being violative of Article I, Section 28, of our Constitution. The court held the contention untenable and that the power to grant exceptions there authorized was that of a fact-finding and administrative nature. See also Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070.

Finally, and in the light of the conclusions expressed, we hold that the Act before us makes it unlawful to grow cotton in certain designated areas in this State, the areas so designated being those found and designated as such by the Pink Bollworm Commission and contained and set forth in the proclamation of the Governor of this State; and that, in those areas designated as regulated zones, it is an exception to the application of the law and a defense to an accusation thereunder that cotton was therein grown in accordance with rules and regulations of the Commissioner of Agriculture. As thus construed, the exceptions mentioned not being a part of the offense created but entirely for his benefit, the accused must take cognizance thereof.

It is within the power of the Legislature to create an offense, and, in the same enactment, to provide exceptions to its application. Baker v. State, 132 Tex. Cr. R. 527, 106 S. W. (2d) 308.

We now come to a consideration of appellant's attack upon the information, which was assailed in the trial court by motion to quash as being vague, indefinite, and failing to charge a violation of law.

No good purpose would be served to here set out the information in detail. It is sufficient to say that the gist of the offense charged was that appellant failed and refused to plow up and to destroy his cottonstalks, by October 1, 1942, which was required only because a rule and regulation of the Commissioner of Agriculture, to that effect, made it so.

An accused may be prosecuted for growing cotton in a regulated area, and may defend against such prosecution by showing that he comes within an exception. He cannot be prosecuted for violating a rule promulgated by the Commissioner of Agriculture, for said Commissioner cannot create an offense.

The information did not charge an offense.

The judgment is reversed and the prosecution is ordered dismissed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.