EX PARTE O. A. SMITH.

No. 24093. May 12, 1948.

Hon. Owen M. Lord, Judge Presiding.

W. J. *Baldwin,* of Beaumont, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

In 1943, the City of Beaumont passed an ordinance relating to the operation of ambulances in the city,* by which it was

---

* The complete ordinance is as follows:

"ENTITLED AN ORDINANCE DEFINING THE TERMS 'EMERGENCY CALL' AND 'DISPATCHER', PROVIDING DUTIES OF DISPATCHER, MAKING IT UNLAWFUL FOR ANY PERSON, FIRM OR CORPORATION TO OPER-

made unlawful for any person, firm, or corporation to drive or operate any ambulance on the streets of said city on an "emergency call" without first having called the police station and received from the "dispatcher" permission to answer the call.

Appellant was charged in the corporation court of said city with violating the ordinance, the accusation being that he did drive and operate an ambulance on an emergency call over the streets of said city without having first received permission from the dispatcher to do so.

Upon trial, he (appellant) was convicted and his punishment assessed at a fine of $25.00. From that judgment he appealed to the county court, where he was again convicted and his punishment fixed at the same amount.

From that judgment appellant appealed to this court, which appeal was dismissed for want of jurisdiction. Smith v. State, 208 S. W. (2d) 100.

A capias pro fine was issued on the judgment and appellant was taken into custody by the sheriff.

Appellant applied to the judge of the Criminal District Court of Jefferson County for the writ of habeas corpus, claiming that

ATE AN AMBULANCE IN THE CITY WITHOUT FIRST CALLING THE DISPATCHER, PROVIDING METHOD OF DISPATCHING AMBULANCES, PROVIDING PENALTY AND SAVINGS CLAUSES AND DECLARING AN EMERGENCY.

"BE IT ORDAINED BY THE CITY COMMISSION OF THE CITY OF BEAUMONT:

"Section 1.

"The term 'emergency calls' shall be held to mean any and all calls and requests for ambulance service on account of circumstances which are, or are represented to be, such as come within the general definition of the term 'emergency', whether such call be transmitted by a private individual, by telephone or in person, or whether such call be transmitted by radio or otherwise.

"Section 2.

"The 'dispatcher' referred to herein shall be the person or persons designated by the Chief of Police in the City of Beaumont and shall be available by telephone at all hours at the Police Station of the city of Beaumont.

"Section 3.

"It shall be unlawful for any person, firm, or corporation to drive or operate any ambulance on the streets of the City of Beaumont on any emergency call without first having called the Police Station of the City of Beaumont and having received permission from the dispatcher to make said call. The dispatcher in said Police Station shall authorize the first ambulance operator who calls reporting an emergency call to make said call and shall inform all subsequent persons who report said call that the emergency call is already being made by the one who

the judgment was void and unenforceable because it was based upon a void ordinance. Application for the writ was granted. After hearing, the relief prayed for was denied and appellant remanded to the custody of the arresting officer. This appeal is from that order.

The ordinance is attacked as being void and violative of the Constitution.

The practical and working effect of the ordinance is to prohibit the owner, driver, or operator of an ambulance from driving and operating the ambulance along and over the streets of the City of Beaumont in answer to an "emergency call"—that is, a call wherein the services of an ambulance are needed because of some unforeseen occurrence or condition calling for immediate action—without the consent of an employee of the city designated as the "dispatcher." Unless and until the owner or operator of an ambulance secures such permission, his right to the free and unlimited use of his property is curtailed to that extent—in fact, it may be entirely destroyed, for he may, without fault upon his part, never be the first to contact the dispatcher in seeking the necessary permission.

It is apparent, therefore, that the limitation of use of an ambulance, as fixed by the ordinance, is based upon and de-

---

has called first, except in cases where additional ambulances are needed, in which case he shall authorize the making of such call by such other ambulances as are needed.

"Section 4.

"Any person guilty of a violation of any of the provisions of this Ordinance shall be guilty of a misdemeanor and shall be subject to a fine of not more than One Hundred and 00/100 ($100.00) Dollars.

"Section 5.

"In the event any section, portion or phrase of this Ordinance is declared invalid by a court of competent jurisdiction, such action shall not affect the remaining portions of this Ordinance.

"Section 6.

"The fact that the existing Ordinances of the City of Beaumont do not afford adequate regulation of emergency ambulance calls and the further fact that several ambulances answering the same emergency call race to the point of destination, thus endangering the lives and property of citizens of Beaumont, creates a public emergency necessitating the suspension of the rule requiring Ordinances to be read on three several days before their passage, and same is hereby suspended and this Ordinance shall be in effect from and after the date of its enactment.

"PASSED by the affirmative vote of all members of the City Commission, this 6th day of August, A. D., 1943.

"R. A. Coale
"MAYOR"

termined by the nature of the call, or what some person represents it to be. If the call is for ambulance service generally, with no designation that it is an "emergency call," the owner and operator of the ambulance is free to accept and answer the call. If, after arriving at the destination or scene it appears that the call was in truth and in fact an "emergency call," the ordinance has been violated, for the ordinance expresslly prohibits the answering of an "emergency call' without permission of the "dispatcher"—and this, without prior notice or knowledge on the part of the owner and operator that in answering the call he would be guilty of a violation of the ordinance. If the call is represented by the person making the call as an "emergency call," the owner or operator of the ambulance is absolutely precluded by this representation from answering the call without the consent of the "dispatcher"—and this, even though, in truth and in fact, no emergency existed and permission of the dispatcher was not required.

Finally, the ordinance deals with a specific class—that is, owners, operators, and drivers of ambulances. Upon its face, it accords to one member of that group a special privilege denied to all others within that class, for it permits only the one to answer an emergency call who first receives permission of the dispatcher.

The emergency clause to the ordinance shows that the basis of the ordinance was that "several ambulances answering the same emergenecy call race to the point of destination, thus endangering the lives and property of citizens of Beaumont." In other words, ambulances racing on the streets of the city occasioned by an emergency call endanger the life of the citizens of the city.

A city, generally speaking, in exercise of its police power to protect the public health and welfare, may control by ordinance the operation of motor vehicles on its streets so long as such ordinances are reasonable and not repugnant to the State and Federal Constitutions.

"Too much significance cannot be given to the word 'reasonable' in considering the scope of the police power in a constitutional sense, for the test used to determine the constitutionality of the means employed by the legislature is to inquire whether the restrictions it imposes on rights secured to individuals by the Bill of Rights are unreasonable, and not whether it imposes any restrictions on such rights. . . . . . . The validity of a police

regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable or arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power.

"In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object falling within the domain of the police power. A statute to be within this power must also be reasonable in its operation upon the person whom it affects, must not be for the annoyance of a particular class, and must not be unduly oppressive." 11 Amer. Jur., Constitutional Law, Sec. 302, p. 1074. Smythe v. State, 116 Tex. Cr. R. 146, 28 S. W. (2d) 161.

Also:

"Regulation which impairs or destroys rather than preserves and promotes is within the condemnation of constitutional guaranties. Where a business in itself is harmless and legitimate, the power of the state to regulate it is not the equivalent of the power to destroy." 11 Amer. Jur., Constitutional Law, Sec. 304, p. 1080.

Viewing the ordinance in the light of the rules stated, the conclusion is reached that the ordinance here under consideration is unreasonable, arbitrary, and discriminatory in violation of Secs. 3 and 19 of Art. 1 of the Constitution of this State and of the Fourteenth Amendment to the Federal Constitution.

The reason prompting the passage of the ordinance, that is to prevent racing on the streets by ambulances, if not already controlled by our speed laws, could be done so by ordinances which would apply to the members of the particular class as a whole.

Believing the ordinance is invalid, the judgment of the trial court is reversed and the appellant ordered discharged.

Opinion approved by the Court.