**NEEL v. TEXAS LIQUOR CONTROL BOARD.**

No. 10144.

Court of Civil Appeals of Texas. Austin.

May 27, 1953.

Rehearing Denied June 17, 1953.

Pichinson & Utter, ·Corpus Christi, Dan Moody, Austin, by Norman L. Utter,. Corpus Christi, for appellant.

John Ben Shepperd, Atty. Gen., by Clyde B. Kennelly, Asst. Atty. Gen., for appellee.

HUGHES, Justice.

Joe Neel, appellant, D.B.A. Joe Neel's Liquor Store No. 2, brought this suit against the Texas Liquor Control Board alleging that he is engaged in the retail liquor business in the City of Corpus Christi under Permit No. 10,049, issued by the Texas Liquor Control Board and that the Board's enforcement of the liquor control laws of this State, particularly paragraph 37, Art. 666–

17, Vernon's Texas Penal Code, will cause him and all other retail liquor dealers in this State permanent and irreparable damage. A declaratory judgment was sought declaring paragraph 37, supra, unconstitutional and void and a permanent injunction against the Board was asked enjoining it from enforcing the provisions of said paragraph.

The facts were all stipulated and are:

"I. Plaintiff Joe Neel is the owner and holder of Package Store Permit No. 10,049, issued to him by the Texas Liquor Control Board under and as authorized by the Texas Liquor Control Act, and particularly Articles 666 and 667, Vernon's Penal Code of the State of Texas, being Chapter 467, Acts of the Second Called Session of the Forty-fourth Legislature, as amended.

"II. Acting under the authority of said permit and under the above stated statute, Plaintiff is engaged in the business of selling alcoholic beverages at retail in Nueces County, Texas, as authorized and permitted by the above described permit.

"III. Texas Liquor Control Board, through its members, agents and employees, periodically issues and sends to all wholesale liquor dealers within the State of Texas a list of the names of all persons engaged in Texas in the sale of liquor at retail who are delinquent under the provisions of sub-section 37 of section 17 of Article 666, Vernon's Penal Code of the State of Texas, being section 7 of chapter 543, Acts of the Fifty-first Legislature, in the payment of accounts due to wholesalers for liquor purchased by such dealers; that pursuant to the provisions of said statute, persons engaged in the sale of liquor at wholesale, or otherwise, engaged in the sale of liquor, refuse to sell to a licensed retail dealer whose name is on such list any liquor whatsoever, and continue to so refuse to sell until the name of such retail dealer is removed from such list or is not included on lists subsequently distributed among wholesale liquor dealers by the Texas Liquor Control Board.

"IV. Plaintiff has been continuously engaged in selling liquor at retail in the City of Corpus Christi since 1945. That his name has been and is now printed or typed on the lists prepared and circulated by the Texas Liquor Control Board including the current list wherein it is stated and represented that Plaintiff was delinquent under the provisions of sub-section 37 of section 17 of Article 666, Vernon's Penal Code of the State of Texas, in the payment of his accounts to wholesale dealers in liquor. That Plaintiff has not been able to purchase any liquor from wholesale dealers in liquor in the State of Texas during the times his name has been on unsuperceded lists solely and alone by reason of such publication of Plaintiff's name on said list.

"V. Prior to the enactment of Section 7 of Chapter 543, Acts of the Fifty-first Legislature, Plaintiff had been able to buy liquor from wholesalers thereof at such prices and upon such credit terms as were agreed to from time to time between Plaintiff and such wholesalers; that prior to said enactment plaintiff was able to and did obtain credit for periods of time in excess of that allowed under said enactment; that except for the peculiar prohibition against the sale of intoxicating liquors imposed by section 7 of chapter 543, Acts of the Fifty-first Legislature, Plaintiff would now be able to obtain credit from wholesalers of liquor for periods of time in excess of that allowed under said enactment, but by force of said statute and publication of Plaintiff's name by the Texas Liquor Control Board, Plaintiff and the wholesalers who are willing to deal with him on such terms are denied the right to enter into such contracts.

"VI. Until Plaintiff's name is removed from the list so circulated by Defendant or until a list is circulated which does not bear his name, Plaintiff is prohibited from purchasing liquor from wholesale dealers although Plaintiff may offer to pay therefor in current legal tender.

315

"VII. It is stipulated that the Plaintiff's permit referred to herein is now in force, that the Plaintiff is now delinquent in his accounts owing to wholesalers, that his name is on the current list of those who are delinquent in paying their accounts to dealers in liquor wholesale and that Plaintiff can not at this time purchase liquor from any authorized wholesaler in Texas."

The trial court rendered judgment that appellant take nothing by his suit.

Paragraph 37, Art. 666–17, V.A.P.C., reads as follows:

"It shall be unlawful for any Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler to sell any alcoholic beverage, nor shall any Package Store Permittee, Wine Only Package Store Permittee, or other retailer purchase any alcoholic beverage, except for cash or on terms requiring payment by the purchaser as follows: On purchases made from the first to fifteenth day inclusive of each calendar month, payment must be made on or before the twenty-fifth day of the same calendar month; and, on purchases made from the sixteenth to the last day inclusive of each calendar month, payment must be made on or before the tenth day of the succeeding calendar month. Every delivery of alcoholic beverage must be accompanied by an invoice of sale giving the date of purchase of such alcoholic beverage. In the event any Package Store Permittee, Wine Only Package Store Permittee or other retail dealer becomes delinquent in the payment of any account due for alcoholic beverages purchased, (that is, if he fails to make full payment on or before the date hereinbefore provided) then it shall be the duty of the Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler to report that fact immediately to the Board or Administrator in writing. Any Package Store Permittee, Wine Only Package Store Permittee or other retail dealer who becomes delinquent shall not be permitted to purchase alcoholic beverages from any Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler until said delinquent account is paid in full, and the delinquent account shall be cleared from the records of the Board before any Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler will be permitted to sell alcoholic beverages to him. Any Wholesaler, Class B Wholesaler, Class A Winery or Wine Bottler who accepts postdated checks, notes or memoranda or who participates in any scheme, trick, or device to assist any Package Store Permittee, Wine Only Package Store Permittee or other retail dealer in the violation of this Section shall likewise be guilty of a violation of this Section. The Board shall have the power and it shall be its duty to adopt rules and regulations giving full force and effect to this Section."

Appellant has four points all of which raise the constitutionality of paragraph 37. Constitutional vices in the statute are asserted to be (1) arbitrary and unreasonable exercise of the police power (2) impairment of the freedom of contract and (3) violation of the due process clauses in that notice to retailer and hearing is not provided for in determining whether list of delinquent accounts submitted by wholesaler is correct.

Appellant concedes that the liquor business is subject to regulation under the police power and that he has no vested property rights by reason of the license under which he operates.

We agree with appellant that the validity of this statute must be determined by application of the following rules taken from Ex parte Smythe, 116 Tex.Cr.R. 146, 28 S.W.2d 161, 162:

" 'The police power of the state extends only to such measures as are reasonable, and the general rule is that all police regulations must be reasonable under all circumstances. In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object falling

within the domain of the police power. A statute to be within this power must be reasonable in its operation upon the persons whom it affects and not unduly oppressive. The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable or arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power.' 6 R.C.L., Constitutional Law, Paragraph 226.

"We take the following from the case of Houston & T. C. R. Co. v. Dallas, 98 Tex. 396, 84 S.W. 648, 653, 70 L.R.A. 850: 'The power is not an arbitrary one, but has its limitations. It is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort, and convenience as consistently as may be with private property rights. As those needs are extensive, various, and indefinite, the power to deal with them is likewise broad, indefinite, and impracticable of precise definition or limitation.'

"It has been further stated: 'In order to sustain legislative interference by virtue of the police power, under either a statute or a municipal ordinance, it is necessary that the act should have some reasonable relation to the subjects included in such power, and the law must tend, in a degree that is preceptible and clear, toward the preservation of the public welfare, or toward the prevention of some offense or manifest evil, or to the furtherance of some object within the scope of the police power. * * *' 6 R.C.L., Constitutional Law, Paragraph 227."

We do not agree with appellant that this statute is arbitrary, unreasonable or that it has no proper relation to the public welfare or other objectives within the legitimate scope of police power.

The term "tied house" has been frequently used to describe the relationship between a wholesale and retail liquor dealer under conditions giving the wholesaler practical control over the business of the retailer. One of the most effective methods of obtaining and keeping such control is through the extension or withdrawal of credit by the wholesaler.

The crux of appellant's argument is found in these quotations from his brief:

"As brought forth strenuously in Appellee's brief, the statute was designed to prevent the evils of the 'tied house'. That is, to break up any possible hold, through credit or the extension thereof, that a wholesaler might impose upon a retailer. Thus, the legislature, and the cases cited by Appellee, hold that the curbing of the length of time a wholesaler can extend credit to a retailer was the method of solving this problem. Appellant has no quarrel with this solution as long as the length of credit extension is reasonable and as long as the statute meets the purpose for which it was intended. * * *

"It is obvious that the practical operation of the statute in forbidding retailers to purchase for cash after a delinquency exists, means either pay your bills or abandon your business, the business which we have authorized you to engage in. There is no thought of preventing the 'tied house' but only concern for paying the debt owed the wholesaler."

We need not dwell upon the evils of the "tied house." It is obvious that one result of such control could be the creation of a monopoly for certain brands of liquors as well as dictating prices. The importance of preventing such control is reflected by a report of the United States Department of Commerce in 1941 titled State Liquor Legislation wherein on page 20 it is stated:

"The liquor control legislation enacted in the several states since the repeal of the Eighteenth Amendment to the Federal Constitution has uniformly attempted to prevent a recurrence of the evils that were prevalent before prohibition when the large liquor interests controlled, through vertical and

horizontal integration, the productive and distributive channels of the industry."

That our own State is in accord with this legislative policy see: Texas Liquor Control Board v. Continental Distilling Sales Co., Tex.Civ.App., 199 S.W.2d 1009, 1014, (Dallas, writ ref. Same case 203 S. W.2d 288) where the Court in referring to various provisions of our regulatory statutes concluded that:

"The Legislature, in enacting the Texas Liquor Law (Art. 666 P.C.), expressly determined that the liquor traffic in this State would be best controlled by keeping the various levels of the liquor industry independent of each other, and to that end provided (sec. 2) that 'All of its provisions shall be liberally construed for the accomplishment of that purpose.'"

As we construe paragraph 37 in the light of the problem involved the legislative purpose was to prevent control of the retailer by the wholesaler through the extension of credit but that probably for reasons of business convenience short periods of time were allowed for payment of goods purchased.

Appellant's principal argument seems to be that there is not substantial relationship between the legislative policy of preventing a "tied house" and the statutory provisions prohibiting cash purchases by a retail dealer who is, as appellant is, delinquent in his wholesale accounts as measured by paragraph 37.

The short answer to this argument is that such provisions are in the nature of a penalty and serve as a deterrent to retailers who might otherwise contemplate delinquency, thus encouraging the legislative policy which the statute proclaims.

A fine, a jail sentence or suspension of one's license would, no doubt, accomplish the same result but this was and is a legislative matter. Appellant complains, we think with poor grace, that the Legislature did not provide a stiffer penalty for his infraction of the law.

Appellant cites no authorities to support his position whereas appellee cites numerous cases and texts to sustain the judgment of the trial court. Among these are: Weisberg v. Taylor, 409 Ill. 384, 100 N.E. 2d 748, Pickerill v. Schott, Fla., 55 So.2d 716, Sepe v. Daneker, 76 R.I. 160, 68 A.2d 101, State v. Zazzaro, 128 Conn. 160, 20 A. 2d 737, Downer v. Liquor Control Commission, 134 Conn. 555, 59 A.2d 290 and James J. Sullivan, Inc., v. Cann's Cabins, Inc., 309 Mass. 519, 36 N.E.2d 371. See also 48 C. J.S. Intoxicating Liquors, § 197, page 329.

We believe it appropriate to make the following quotation from appellee's brief:

"Just as the regulation of credit is not novel in Texas, neither is it novel in other jurisdictions. In the survey, State Liquor Legislation, which is mentioned above, the regulation of credit transactions is discussed in connection with other measures which are designed to prevent vertical integration. In prefacing such discussion, the authors observe (page 54) that the regulation of credit transactions serves: 'to prevent wholesalers, distributors, brewers, distillers, and others from offering attractive credit terms as a means of influencing retailers to enter into exclusive dealing arrangements or tying contracts with them.' In surveying the legislation on this subject, the authors of the Survey point out that the eight monopoly States of Alabama, Delaware, Idaho, Iowa, Michigan, Pennsylvania, Washington and West Virginia, all require that sales of liquor be made for cash only.

"Kentucky 'forbids any brewer, wholesaler or distributor to sell alcoholic beverages to any person in Kentucky for any consideration except cash paid on or before the time of delivery.' In Massachusetts, 'credit may not be extended for more than 90 days.' The Rhode Island regulatory rules provide for a 30 day credit period and bar wholesalers from making anything other than cash sales to retailers who are in arrears. The District of Columbia statute provides that only 'reasonable credit' may be extended to a retail licensee. The Missouri statute couches the matter in terms of the

extension of only 'ordinary commercial credit.' When the Survey was written, the Florida statute provided that 'any device' for extending credit was unlawful. However, as appears from a decision which is discussed below, the Florida statute has been amended to provide that manufacturers, wholesalers and distributors cannot extend credit to retailers for more than 10 days after the calendar week in which the sale is made.

"According to the authors of the Survey, the following additional States also have provisions which, in one manner or another, limit or ban the extension of credit to retailers: Arizona, California, Illinois, Indiana, Nebraska, New Jersey, New Mexico, New York and Ohio. To this list can be added the States of Connecticut and Kansas which have enacted statutes after the Survey was published. Moreover, it is interesting to note that as also appears from a decision discussed below, although Mississippi forbids the sale of liquor, its statutes provide that if anyone extends credit on a sale of intoxicating liquor, such person shall lose the debt.

"Consequently, at least twenty-six jurisdictions in this country, in addition to the State of Texas, have enacted statutes which either prohibit the extension of credit in connection with sales of intoxicating liquors, or which restrict the terms upon which such credit can be extended."

In our opinion Texas should and by this decision does join the concourse of courts which sustain statutes of the type similar to our own.

Appellant having conceded, as he must, that the liquor business is subject to regulation under the police power of the State has destroyed the force of his objection that this statute interferes with his freedom to contract as he pleases. In Wylie v. Hays, 114 Tex. 46, 263 S.W. 563, 565, it is said: "* * * it may be safely said that, if a law regulating contracts to be executed in the future has as its object that which may be clearly and reasonably considered by the Legislature to be the public welfare, prescribes means reasonably calculated and necessary to aid in accomplishing that object, and operates in a reasonable and not an arbitrary, capricious, or oppressive manner, it is within the police power, constitutes due process of law, and, consequently, is superior to the liberty of contract."

Subject to similar disposition is appellant's complaint that he has been denied due process of law by the failure of paragraph 37 to provide for notice and hearing as to the fact of a retailer's delinquency in the matter of payment to the wholesaler. Due process of law insofar as appellant is concerned in this case is measured by the terms of the law under which he is licensed. Texas Liquor Control Board v. Scrivano, Tex.Civ.App., 256 S.W. 2d 598 (San Antonio) and authorities therein cited. See also Texas Liquor Control Board v. Cannon, Tex.Civ.App., 147 S. W.2d 927 (Fort Worth), Texas Liquor Control Board v. Warfield, Tex.Civ.App., 122 S.W.2d 669 (Waco), Texas Liquor Control Board v. O'Fallon, Tex.Civ.App., 189 S.W.2d 885 (Dallas) and Bradley v. Texas Liquor Control Board, Tex.Civ. App., 108 S.W.2d 300 (Austin).

We are further of the opinion that appellant by voluntarily submitting himself to the provisions of our laws regulating retail liquor dealers and by his acceptance of benefits thereunder has waived the right to urge any constitutional objections to paragraph 37. Louisiana Ry. & Nav. Co. v. State, Tex.Com.App., 7 S.W. 2d 71, Texas Underwriters v. Martinal, Tex.Civ.App., 140 S.W.2d 582 (El Paso).

The judgment of the trial court is affirmed.