

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NOS. **PD-0622-09 through PD-0626-09**

**MARIO RICO MARTINEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW
## FROM THE SECOND COURT OF APPEALS
## WICHITA COUNTY

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. MEYERS, J., did not participate.

## O P I N I O N

We hold that the Fort Worth Court of Appeals did not err in holding that Section 125.065(a)(2), Texas Civil Practice and Remedies Code, which permits a judge to impose reasonable requirements when enjoining criminal street gang activity, a violation of which is punishable under Penal Code Section 71.021, does not violate the separation of powers doctrine. We also conclude that the court of appeals correctly determined that the provision

of the injunction prohibiting Mario Rico Martinez from making gang hand signs and wearing gang clothing did not violate the First Amendment and was not unconstitutionally vague.

**Background**

We begin by focusing on two statutes that are aimed at controlling the ever-growing communal problem of criminal gang-related violence across this state.[1] Section 125.065 of the Texas Civil Practice and Remedies Code allows a judge to enter an order restricting criminal gang-related activities that represent a public nuisance:

> (a) If the court finds that a combination or criminal street gang constitutes a public nuisance, the court may enter an order:
> > (1) enjoining a defendant in the suit from engaging in the gang activities of the combination or gang; and
> > (2) imposing other reasonable requirements to prevent the combination or gang from engaging in future gang activities.
> (b) If the court finds that a place is habitually used in a manner that constitutes a public nuisance, the court may include in its order reasonable requirements to prevent the use of the place for gang activity.[2]

Section 125.061(3) of the Texas Civil Practice and Remedies Code defines gang activity as several criminal offenses.[3] Under Texas Penal Code Section 71.021, it is a Class A misdemeanor offense to violate an order enjoining gang-related activities constituting a

---

[1] *See generally* Gangs in Texas 2001: an Overview, Attorney General of Texas, *available at* http://www.oag.state.tx.us/AG_Publications/pdfs/2001gangrept.pdf (discussing Texas gang issues).

[2] TEX. CIV. PRAC. & REM. CODE ANN. § 125.065; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 125.061(3) (defining "gang activity"); TEX. PENAL CODE ANN. §§ 71.01(a) (defining "Combination"), (d) (defining "Criminal Street Gang"), 71.02 (defining the offense of engaging in organized criminal activity).

[3] TEX. CIV. PRAC. & REM. CODE ANN. § 125.061(3).

nuisance: "A person commits an offense if the person knowingly violates a temporary or permanent order issued under Section 125.065(a) or (b), Civil Practice and Remedies Code."[4]

In September 2006, the trial judge in the Eighty-Ninth District Court of Wichita County entered a temporary order enjoining specific members of the Varrio Carnales (VC) street-gang, including Martinez, from engaging in certain activities. The temporary injunction established a "VC safety zone" by delineating particular boundaries within Wichita Falls. Among other things, the order enjoined Martinez from:

2. Associating, standing, sitting, walking, driving, bicycling, gathering or appearing anywhere in public view with any other Defendant herein, with other known members of any other street gang, or any other individual who the Defendant knows is a member of the VC, with other known members of any other street gang, or any other individual who has been charged with a criminal offense.

. . .

16. Using or making words, phrases, physical gestures, or symbols, commonly known as gang hand signs or engaging in other forms of communication which the Defendant knows, describes, refers, or identifies members of the combination, or wearing clothes that particularly identify membership within the combination.

. . .

29. At any location in Wichita County, at any time entering onto the property of another Defendant who is a party to this lawsuit or any other individual who the Defendant knows is a member of the VC.

The trial judge also scheduled a hearing to decide whether the temporary injunction should be made permanent.

In April 2007, the trial judge issued a permanent order enjoining Martinez and other

---

[4] T EX. PENAL CODE ANN. § 71.021(a), (c).

VC gang members from engaging in various activities. Though the activities prohibited by the order were nearly identical to those in the temporary order, the conditions under which the order was entered differed. According to the order,

> It was announced to the Court that the parties have reached a settlement of their dispute and desire to terminate the litigation in this cause pursuant to the terms set out in this Order. The Court is of the opinion that this Agreed Order is well taken and should in all things be granted and the same is hereby **GRANTED**.
>
> . . .
>
> The parties further agree this Order shall not be used as evidence in a criminal proceeding except those criminal proceedings relating to violations of this Order, and any other applicable criminal contempt or civil contempt proceeding brought pursuant to Chapter 125 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.
>
> IT IS FURTHER ORDERED that if Mario Martinez, as of April 6, 2010, has not been arrested for any criminal offense defined as "criminal gang activity" by chapter 125 of the TEXAS CIVIL PRACTICE & REMEDIES CODE, he will be removed from this injunction.
>
> IT IS FURTHER AGREED by the parties hereto that the above enjoined activities constitute reasonable restrictions as contemplated and permitted by the TEXAS CIVIL PRACTICE & REMEDIES CODE Section 125.065.

The order was signed by Martinez's attorney, and it notified Martinez that he had the right to prosecute an appeal.[5] Martinez did not appeal the order.

In cause number 40229-F,[6] Martinez was charged with violating provisions two and

---

[5] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 125.067(b) ("Not later than the 90th day after the date of the injunctive order, an appropriate court of appeals shall hear and decide an appeal taken by a person enjoined under this subchapter.").

[6] 01-97791-M07-40229-F.

twenty-nine of the temporary injunction by entering the property of another VC gang member. In cause numbers 39396-F[7] and 40552-F,[8] Martinez was also charged with violating the temporary injunction by making hand gang signs or engaging in other forms of communication that Martinez knows describes, refers, or identifies members of the combination or wearing clothes that identify membership with the combination within the VC safety zone. In cause number 39397-F,[9] Martinez was charged with violating the temporary injunction by associating, driving, or appearing in public view in the VC zone with another named defendant to the injunction. Finally, in cause number 40116-F,[10] Martinez was charged with violating a provision of the permanent injunction.

## County Court at Law Proceedings

Before trial, Martinez moved to dismiss the charges. Among other things, Martinez claimed that "reasonable requirements" language in Section 125.065(a)(2), Texas Civil Practice and Remedies Code, violates the separation of powers doctrine of the Texas Constitution because it allows judges to make criminal laws that may be sanctioned under Penal Code Section 71.021. Martinez further alleged that provision sixteen of the temporary injunction is unconstitutionally vague and overbroad. Clarification of Martinez's

---

[7] 01-97791-M07-39396-F.

[8] 01-97791-M07-40552-F.

[9] 01-97791-M07-39397-F.

[10] 01-97791-M07-40116-F.

overbreadth claim, at this point, is required. While Martinez used the word overbroad to describe part of his challenge to provision sixteen, a review of the record at trial and on appeal shows that Martinez was not mounting a classic overbreadth claim as it is understood in its legal and technical nomenclature. Martinez appears to have confused First Amendment legal theories throughout the duration of this case. Properly labeled, Martinez's First Amendment challenge presented a challenge to his right to free speech. This is the claim raised and preserved for appellate review, even though it has been repeatedly mislabeled at the trial and appellate court levels.

After hearing the parties' arguments on these issues, the trial judge denied Martinez's request to dismiss. Martinez pled guilty in each case, and the trial judge certified Martinez's right to appeal the motions to dismiss.

### Court of Appeals

Before the Fort Worth Court of Appeals, Martinez argued, among other things, that Section 125.065(a)(2) violates the separation of powers doctrine and that provision sixteen of the temporary injunction, which prohibited him from using gang hand signs and wearing gang clothing, was unconstitutionally vague and overbroad.[11]

The court rejected Martinez's separation-of-powers claim, relying on its previous

---

[11] *Martinez v. State*, Nos. 2-08-070-CR through 2-08-074-CR, 2009 Tex. App. LEXIS 1067, at *5, 17 (Tex. App.—Fort Worth Feb. 12, 2009) (not designated for publication).

published opinion addressing the issue in *Goyzueta v. State*.[12] In *Goyzueta*, the court analogized the statutes here to specific statutes in the Civil Commitment of Sexually Violent Predators Act, which the Beaumont Court of Appeals in *Beasley v. Molett* determined did not violate the separation of powers doctrine.[13] Under the Civil Commitment of Sexually Violent Predators Act, a judge shall, before subjecting a person to outpatient civil commitment, impose requirements necessary, according to the judge's determination, to ensure the person's compliance with treatment and supervision to protect the community.[14] It is a third degree felony offense if a person adjudicated and civilly committed as a sexually violent predator violates a judge-imposed commitment requirement.[15] Beasley claimed that the trial judge's individual authority to impose requirements that the judge deems necessary affords the judge the authority to create a third-degree felony in violation of the separation of powers doctrine.[16] The Beaumont Court disagreed, concluding that the Legislature determined that a violation of a judge's necessary requirements are third-degree felonies.[17]

Applying the *Beasley* court's reasoning, the Forth Worth Court in *Goyzueta* held that

---

[12] *Martinez*, 2009 Tex. App. LEXIS 1067, at *5-6 (citing *Goyzueta v. State*, 266 S.W.3d 126 (Tex. App.—Fort Worth 2008)).

[13] 266 S.W.3d at 135 (citing *Beasley v. Molett*, 95 S.W.3d 590, 607-09 (Tex. App.—Beaumont 2002, pet. denied)).

[14] T EX. HEALTH & SAFETY CODE ANN. § 841.082(a)(9).

[15] T EX. HEALTH & SAFETY CODE ANN. § 841.085(a)-(b).

[16] *Beasley*, 95 S.W.3d at 607-09.

[17] *Id.*

"the separation of powers doctrine is not violated merely because the legislature authorized trial courts to impose reasonable requirements not specifically listed in the statute to prevent known gang members from engaging in criminal activity."[18]  Therefore, the court held that there is no violation of the separation of powers doctrine.[19]

Turning to the constitutionality of provision sixteen of the temporary injunction, which prohibited the use of hand gang signs in this case, the court of appeals held that it is neither overbroad nor vague.[20]  We pause to note again that Martinez's overbreadth claim presented a challenge to provision sixteen as an improper restriction on his speech in violation of the First and Fourteenth Amendments.[21]  When analyzing this claim (despite the improper label), the court identified the provision as content-neutral because it prohibited only the use of all hand gang signs in the VC Safety Zone.[22]  Martinez's particular message, in the court's opinion, was not the focus of the provision because it applies to all gang signs.[23]  The court determined that the burden on Martinez does not exceed the means necessary to carry out the State's interest in maintaining a safe area.[24]

---

[18] *Goyzueta*, 266 S.W.3d at 136.

[19] *Id.*

[20] *Martinez*, 2009 Tex. App. LEXIS 1067, at *17-22.

[21] *Id.*

[22] *Id.* at *19-20.

[23] *Id.*

[24] *Id.*

The court then held that the provision is not unconstitutionally vague because the conduct is defined sufficiently for a reasonable person to understand and for law enforcement to apply.[25] The subject matter is limited to hand gestures that identify an individual as a gang member and such gestures are easy to identify, especially for law enforcement.[26]

Finally, the court examined whether the gang-clothing restriction in provision sixteen is void for vagueness.[27] The court determined that the conduct is sufficiently defined for an ordinary person to understand and is specific enough to prevent arbitrary and discriminatory enforcement because the gang colors are known to law enforcement and are therefore easily identifiable.[28]

**Petitions for Discretionary Review**

We granted Martinez's petitions for discretionary review to decide whether the court of appeals erred in holding that Texas Civil Practice and Remedies Code Section 125.065, when sanctioned through Penal Code Section 71.021, does not violate the separation of powers doctrine.[29] We also granted review to decide whether the court of appeals erred in concluding that provision sixteen, which prohibited Martinez from making hand gang signs and wearing gang clothing, did not violate Martinez's right to free speech and was not

---

[25] *Id.* at *21.

[26] *Id.*

[27] *Id.* at *22-23.

[28] *Id.*

[29] *See* TEX. CONST. art. II, § 1.

unconstitutionally vague.

In his brief on the merits, Martinez also complains that Section 71.021 is void for vagueness. Although the court of appeals addressed this claim,[30] Martinez did not present this as a ground in his petitions for discretionary review. As a result, we did not grant review to address the court of appeals's decision on this issue, and we decline to address it at this juncture.

## Estoppel

Before we address the merits of Martinez's grounds for review, we will determine whether Martinez should be estopped from raising any claims under the permanent injunction.[31] We conclude that he is estopped from doing so under the circumstances here. The permanent injunction was agreed to by Martinez, through counsel, as part of a settlement to "terminate" litigation. Martinez agreed that the activities precluded by the injunction were "reasonable restrictions" under Texas Civil Practice and Remedies Code Section 125.065. Further, the duration of the injunction was fixed; it expired on April 6, 2010, if Martinez was not arrested for an offense defined as "criminal gang activity" in Chapter 125 of the Texas Civil Practice and Remedies Code. As we recently recognized in *Rhodes v. State*, "a party who accepts the benefits under a contract is estopped from questioning the contract's

---

[30] *Martinez*, 2009 Tex. App. LEXIS 1067, at *5-6.

[31] *See Rhodes v. State*, 240 S.W.3d 882, 887 n.9 (Tex. Crim. App. 2007) ("because the State prevailed at trial, we may in our discretion address subsidiary arguments that support the trial court's ruling that were not presented to the court of appeals.").

existence, validity, or effect."[32]  The permanent injunction was the result of a *quid pro quo* agreement between Martinez and the State; therefore, we conclude that Martinez is estopped from mounting any challenge to the permanent injunction.  Consequently, we refuse to address the merits of Martinez's claims as they relate to cause number 40116-F.

## Separation of Powers Doctrine

The sovereign power of our state government is divided into three distinct, but equal branches: the Legislative; the Executive; and the Judicial.[33]  Each branch has a designated function, and complications arise when one branch intrudes upon or usurps the power of another.[34]  In the past, we have identified two types of separation-of-powers violations.[35] The first occurs "when one branch of government assumes, or is delegated, *to whatever degree*, a power that is more 'properly attached' to another branch."[36]  The second occurs "when one branch unduly interferes with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers."[37]

---

[32]  240 S.W.3d at 891 (citing 31 C.J.S. Estoppel & Waiver § 124, at 554)).

[33]  *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990) (quoting Article 2 § 1 TEX. CONST.).

[34]  *Id.*

[35]  *Id.*

[36]  *Id.* (quoting *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex. Crim. App. 1973)) (emphasis in original).

[37]  *Id.* (citing *Rose v. State*, 752 S.W.2d 529, 535 (Tex. Crim. App. 1987); *Meshell v. State*, 739 S.W.2d 246, 252 (Tex. Crim. App. 1987)) (emphasis in original).

Our Legislature, which "declares the public policy of the state," holds the exclusive power to make law.[38] Thus, the Legislature possesses the sole authority to establish criminal offenses and designate applicable penalties.[39] Generally, the Legislature may not delegate its law-making power to another branch.[40] However, "[w]hen the Legislature itself cannot practically or efficiently perform the functions required, it has the authority to designate some agency to carry out the purpose of such legislation."[41] So once the Legislature declares a policy and sets a "primary standard," it may authorize an agent to prescribe the necessary details to carry out a law's purpose.[42] A legislative grant of discretionary authority to an agent designated to carry out a legislative policy is proper when the Legislature has set standards for guidance that are capable of reasonable application.[43]

So long as the statute is sufficiently complete to accomplish the regulation of

---

[38] *State v. Rhine*, 297 S.W.3d 301, 305 (Tex. Crim. App. 2009) (citing *State v. Dallas*, 319 S.W.2d 767, 774 (Tex. Civ. App.—Austin 1958)); *see also Williams v. State*, 176 S.W.2d 177, 182 (Tex. Crim. App. 1943) ("the lawmaking bodies of each State pass laws to protect the peace, health, happiness, and general welfare of society, and of the people as a whole.").

[39] *Rhine*, 297 S.W.3d at 306 (citing *Sasser v. State*, 131 Tex. Crim. 347, 98 S.W.2d 211, 212 (Tex. Crim. App. 1936); *David v. State*, 453 S.W.2d 172, 179 (Tex. Crim. App. 1970), *vacated on other grounds in David v. Texas*, 408 U.S. 937 (1972); *Grant v. State*, 505 S.W.2d 279, 282 (Tex. Crim. App. 1974)); *Ex parte Granviel*, 561 S.W.2d 503, 515 (Tex. Crim. App. 1978).

[40] *Ex parte Granviel*, 561 S.W.2d at 514; TEX. CONST. art. III, § 1.

[41] *Ex parte Granviel*, 561 S.W.2d at 514.

[42] *Id.*

[43] *Id.*

the particular matters falling within the Legislature's jurisdiction, the matters of detail that are reasonably necessary for the ultimate application, operation and enforcement of the law may be expressly delegated to the authority charged with the administration of the statute.[44]

We presume that a law delegating authority to an agent is constitutional, and the party asserting a separation-of-powers violation must show that the Legislature's delegation is unlawful.[45]

Applying the foregoing analytical framework, we begin by examining the legislative history and purpose behind Section 125.065 of the Texas Civil Practice and Remedies Code and Penal Code Section 71.021. In enacting Section 125.065 in 1993, the Legislature intended to permit local governments to abate the nuisance created by street gangs involved in illegal conduct "while having a zero net effect on the already crowded prison system."[46] As originally enacted, Section 125.065 stated: "If the court finds that a combination or criminal street gang constitutes a public nuisance, the court may enter an order enjoining a defendant in the suit from engaging in the organized criminal activities of the combination or gang."[47] A violation of a court order entered under Section 125.065 was punishable only

---

[44] *Id.*

[45] *Id.* at 515.

[46] House Comm. on Urban Affairs, Bill Analysis, Tex. H.B. 697, 73rd Leg. R.S. (1993).

[47] Acts 1993, 73rd Leg., ch. 968, § 3, eff. Aug. 30, 1993.

through civil contempt proceedings.[48]  After some minor amendments in 1995,[49] in 2003, the Legislature amended Section 125.065 to permit a judge to impose "other reasonable requirements to prevent the combination or gang from engaging in future gang activities."[50] The bill analysis noted this modification and stated that the purpose of the bill is to allow "certain entities to issue civil injunctions to deter certain gang[-]related conduct and seek aid to communities which experience high volumes of gang activity to be able to participate in the disenfranchising of gang-related gatherings."[51]

In 1995, the Legislature enacted Penal Code Section 71.021.[52]  The purpose of the bill was to create a criminal offense for a violation of an order entered under Section 125.065 and provide for a criminal penalty.[53]

The clear legislative goal behind Section 125.065 is to put an end to the nuisance activities of criminal street gangs that wreak havoc on our local communities.  To enforce this policy, the Legislature has chosen to provide for the possibility of both civil and criminal

---

[48] T EX. CIVIL PRAC. & REM. CODE ANN. § 125.066.

[49] Acts 1995, 74th Leg., ch. 76, § 14.13, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 318, § 34, eff. Sept. 1, 1995.

[50] Acts 2003, 78th Leg., ch. 1202, § 11, eff. Sept. 1, 2003.

[51] Senate Comm. on Jurisprudence, Bill Analysis, Tex. S.B. 1010, 78th R.S. (2003).

[52] Acts 1995, 74th Leg., ch. 584, § 1, eff. Sept. 1, 1995.

[53] Senate Comm. on Jurisprudence, Bill Analysis, Tex. SB 1090, 74th R.S. (1995).

sanctions.[54]

With the legislative policy established, we now evaluate whether the Legislature has provided a fixed primary standard that is capable of being reasonably applied, provides guidance, and limits discretion.[55] A comprehensive review of the statute demonstrates that the Legislature has set a primary standard that instructs and limits a judge's discretion when formulating and imposing "reasonable requirements to prevent the combination or gang from engaging in future gang activity." First, any action taken by a judge is preceded by a judicial determination that the criminal gang or combination constitutes a public nuisance. A public nuisance is a "combination or criminal street gang that continuously or regularly associates in gang activities . . . ."[56] Conduct constituting gang activity is defined in Section 125.061 of the Texas Civil Practice and Remedies Code as follows:

(A) organized criminal activity as described by Section 71.02, Penal Code;
(B) terroristic threat as described by Section 22.07, Penal Code;
(C) coercing, soliciting, or inducing gang membership as described by Section 22.015, Penal Code;
(D) criminal trespass as described by Section 30.05, Penal Code;
(E) disorderly conduct as described by Section 42.01, Penal Code;
(F) criminal mischief as described by Section 28.03, Penal Code, that causes a pecuniary loss of $500 or more;
(G) a graffiti offense in violation of Section 28.08, Penal Code, that:
        (i) causes a pecuniary loss of $500 or more; or

---

[54] T EX. PENAL CODE ANN. § 71.021.

[55] *Rhine*, 297 S.W.3d at 306.

[56] T EX. CIV. PRAC. & REM. CODE ANN. § 125.062; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 125.061(2) ("'Continuously or regularly" means at least five times in a period of not more than six months.").

(ii) occurs at a school, an institution of higher education, a place of worship or human cemetery, a public monument, or a community center that provides medical, social, or educational programs;
(H) a weapons offense in violation of Chapter 46, Penal Code; or
(I) unlawful possession of a substance or other item in violation of Chapter 481, Health and Safety Code.[57]

By virtue of this definition, any "reasonable requirements" formulated and imposed by a judge must be tied to the foregoing list of criminal offenses. Any judge-imposed requirements must directly correlate to the elimination of "gang activity" as defined by the Legislature.

Additionally, the modification of "requirements" by the term "reasonable" in Section 125.065 serves to further guide and limit a trial judge's discretion. The plain meaning of the term "reasonable" applies under our rules of statutory construction,[58] and "reasonable" is defined as "[f]air, proper, just, moderate, suitable under the circumstances."[59] Thus, when imposing "reasonable requirements" to prevent criminal gangs from engaging in future activity, a judge's discretion is restricted by the list of criminal offenses that make up the definition of gang activity as well as the "reasonable" element.

There is also a process for review. Any "reasonable requirements" imposed by a

---

[57] Tex. Civ. Prac. & Rem. Code Ann. § 125.061(3).

[58] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.") (citing *Smith v. State*, 789 S.W.2d 590, 592 (Tex. Crim. App. 1990)).

[59] Black's Law Dictionary 656 (abridged 5th ed. 1983).

judge are subject to appellate review.[60]  This adds an extra layer of protection from the application and enforcement of arbitrary requirements that do not serve the statute's purpose.[61]

Finally, we recognize that some flexibility in a judge's formulation and imposition of "reasonable requirements" must exist due to the nature of the activity sought to be curtailed. A judge must be afforded some discretionary authority to take into account the specific facts involved in a particular case and tailor the "reasonable requirements" to those facts in an effort to prevent future gang activity and effectuate the statute's purpose.[62]  Such permissive discretion granted by the Legislature does not render the statute violative of the separation of powers doctrine.

Our determination is also supported by precedent.  In *Williams v. State*, we decided whether the Pink Bollworm Act constituted an unlawful delegation of legislative authority to the Commissioner of Agriculture.[63]  The Legislature made it an offense to violate any

---

[60]T EX. CIV. PRAC. & REM. CODE ANN. § 125.067(b).

[61]  *Rhine*, 297 S.W.3d at 323 (Keller, P.J., concurring) ("judicial review ensures that the administrative agency's rules and other actions actually conform to the legislative standards.").

[62]  *See Land v. State*, 581 S.W.2d 672, 673 (Tex. Crim. App. 1979) ("Very often the areas that require regulation involve highly technical fields or areas where massive accumulation of data is necessary.  Faced with limitations on funds, time, manpower, legislators find it impossible to acquire the requisite knowledge and expertise to enable them to responsibly legislate in the area.").

[63]  *Williams*, 176 S.W.2d at 179, 182-83.

"proclamation, rule, or regulation promulgated by, or authorized to be issued," under the Pink Bollworm Act.[64] Williams was convicted of failing to comply with an order issued by the Commission governing the growing of cotton in a regulated zone.[65] On appeal, we held that the Legislature did not unlawfully delegate its lawmaking authority: "it must be remembered that it was not the [Bollworm] Commission that made it unlawful to grow cotton in the areas covered by the recommendations. The Legislature itself did that and provided the punishment to be applied for a violation thereof."[66] This statutory construct in this case is similar to the one in *Williams*. Here, the Legislature made it a Class A misdemeanor offense to violate a judge's order imposing reasonable restrictions to curtail future criminal gang activities.

Because the Legislature has established a policy and has set forth a primary fixed standard, we hold that there is no separation of powers violation.

### First Amendment—Right to Free Speech

An individual's right to free speech and expressive conduct is protected from "arbitrary governmental interference . . . ."[67] Therefore, as a general rule, the government

---

[64] *Id.* at 182 (quoting TEX. PENAL CODE art. 1034).

[65] *Id.* at 179, 182.

[66] *Id.* at 183.

[67] *Cohen v. California*, 403 U.S. 15, 19 (1971); *see also Tinker v. Des Moines Indept. Comm. School Dist.*, 393 U.S. 503, 513 (1969) ("The Constitution says that Congress (and the States) may not abridge the right to free speech.").

is prohibited from "prescrib[ing] the form or content of individual expression."[68]

Our first task is to decide whether provision sixteen is a content-neutral or a content-based time, place, and manner restriction.[69] Whether the provision is content-neutral or content-based dictates the level of scrutiny that we will apply in deciding whether provision sixteen violates Martinez's First Amendment rights.[70]

The court of appeals held that the gang hand sign restriction was not content-based because it prohibited all gang hand signs, not just those used by the VC street gang, and therefore was not focused on the particular message.[71] We disagree with this determination. A content-based regulation focuses on the content of speech and its impact on others.[72] Provision sixteen banned the particular message associated with, and attributable to, the

---

[68] *Cohen*, 403 U.S. at 24; *see also United States v. Playboy Ent. Group, Inc.*, 529 U.S. 803, 812 (2000) ("Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles.").

[69] *See R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 382 (1992); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Boos v. Barry*, 485 U.S. 312, 319-20 (1988).

[70] *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 763-64 (1994) (deciding that a content-neutral injunctive provision cannot burden more "speech than necessary to serve a significant government interest"; *compare with Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45 (1983) ("For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and it is narrowly tailored to achieve that end.").

[71] *Martinez*, 2009 Tex. App. LEXIS 1067, at *19-20.

[72] *Boos*, 485 U.S. at 321.

display of gang hand signs and clothing.[73] That all gang hand signs, not just those used by the VC street gang, were prohibited does not render that prohibition content-neutral. The court of appeals's reasoning would apply had provision sixteen banned all hand signs. However, the content of the gang hand signs and clothing provided the basis for the restrictions in provision sixteen and the purpose was to ban the message conveyed by such signs and clothing.

Because we have found that provision sixteen is content-based, we will decide whether it was narrowly tailored to serve a compelling state interest.[74] We conclude that the strict scrutiny standard has been met in this case. First, we conclude that there was a compelling state interest. The prohibition in provision sixteen was made after the district court judge found that the VC street gang constituted a public nuisance.[75] In making this

---

[73] *See id.* at 318-19 (concluding that picketing regulation was content-based because it suppressed a classification of speech—signs critical of foreign governments—but not all picketing in front of foreign embassies); *People ex rel. Gallo v. Acuna*, 48 Cal. App. 4th 641, 657-658 (Cal. Ct. App. 1995) (holding that gang injunctions provisions prohibiting specific hand gang signs and gang clothing is content-related; "it is only the speech, symbols, gestures, and hand signs relating to two specific gangs."), *vacated*, 929 P.2d 596 (Cal. 1997); *see e.g., Collin v. Smith*, 578 F.2d 1197, 1202 (7th Cir. 1978) (holding ordinance banning Nazi demonstration where symbolic clothing would be worn is content-based). *But see People v. Englebrecht*, 88 Cal. App. 4th 1236, 1266 (Cal. Ct. App. 2001) (holding that injunction prohibiting "Posole" gang signs and clothing is content-neutral; "[i]t is not the content of these expressions to which the injunction looks but the fact of them and their effect on others.").

[74] *See Madsen*, 512 U.S. at 763-64 (observing that the content-neutral injunctive provisions do not require the application of the heightened level of scrutiny set out in *Perry Ed. Ass'n.*).

[75] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 125.065(a).

determination, the judge specifically found:

- The Court, after examining the pleadings and attached affidavit, and hearing evidence, finds there is evidence that proves a probable right to recovery and a probable injury, specifically:

  - Pursuant to Section 125.064 and 125.065, Plaintiff is entitled to the relief demanded and that relief requires the restraint of certain actions by the VC . . . GANG: . . . Mario Martinez . . . .

  - Harm is imminent to Plaintiff, and if the Court does not issue the temporary injunction order, Plaintiff will be irreparably injured because the Defendants will continue for an indefinite period of time to be members of the VC or members of a criminal combination who regularly associate in organized criminal activities. Moreover, unless enjoined, the Defendants will continue indefinitely to use the **"VC Safety Zone #1"** for the purpose of engaging in organized criminal activity as well as other gang related conduct. Such acts constitute irreparable harm because they jeopardize the safety and well being of the citizens living in the **"VC SAFETY ZONE #1"**.

The State has a recognizable compelling interest in ensuring the safety of citizens in the VC Safety Zone by preventing crime,[76] and the judge's order in this case was issued to protect that interest.

Second, provision sixteen was narrowly tailored to serve the State's compelling interest. It prohibited a particular type of conduct and communication based on the relevant circumstances. The making of hand gang signs and the wearing of gang clothing are a

---

[76] *See Madsen*, 512 U.S. at 768 (the state has a "strong interest in ensuring the public safety and order . . . and in protecting the property rights of all its citizens.").

primary feature of street gangs.[77] A street gang is identified first and foremost through its hand signs and attire; it puts the public, and most of all, rival gangs, on notice of its existence and presence. Rivalries exist between street gangs, and the use of gang hand signs and clothing, the identifier, contributes to the onset of violence between rival gangs. Additionally, gang hand signs and clothing are used to promote a criminal street gang's overall objective of engaging in gang activity.[78] What is lawful on its own, in this instance, is inextricably intertwined with the gang's unlawful exploits. Specifically, as noted above, the objectives of the VC gang, as determined by the district court judge, include some of the following penal code offenses: organized criminal activity, terroristic threats, criminal trespass, disorderly conduct, criminal mischief, unlawful possession of controlled substances, and coercing, soliciting, and inducing gang membership.[79] Therefore, as the judge implicitly found, gang hand signs and clothing represent an integral part of VC's illegal exploits, and prohibiting gang hand signs and the wearing of gang clothing was one essential tool in eliminating the gang's public-nuisance activities.

Provision sixteen was also narrowed by geography. The restrictions applied only in the VC Safety Zone clearly delineated by the district court judge. From our calculations of

---

[77] *See* Gangs in Texas 2001: an Overview, Attorney General of Texas, at 7, *available at* http://www.oag.state.tx.us/AG_Publications/pdfs/2001gangrept.pdf (including gang hand signs and clothing in list as signs of gang involvement).

[78] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 125.061(3) (listing criminal offenses as definition of gang activity).

[79] *Id.*

the delineated boundaries, the VC Safety Zone, at its largest points, was approximately 1.2 miles (or seventeen city blocks) by approximately 1.4 miles (or twenty-two city blocks) in Wichita Falls. Martinez remained free to engage in making gang hand signs and to wear gang clothing in every place in Wichita Falls, and beyond, with the exception of the defined, public VC Safety Zone. We defer to the district court judge's determination that this area was necessary to stop the VC's public-nuisance activities given the gang's past practices in that area.[80] And, as an aside, we note that we are not confronted with a situation in which an individual was charged with violating the prohibitions outlined in provision sixteen in a private residence. Thus, we render no opinion on the issue of whether the prohibitions in provision sixteen would violate an individual's First Amendment right to free speech if the facts showed that the individual was prosecuted for using hand gang signs and wearing gang clothing inside a private residence.

Based on our analysis above, we hold that provision sixteen did not violate Martinez's right to free speech under the First Amendment.

## Vagueness Challenge

A law is unconstitutionally vague when it "fails to define the criminal offense 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and

---

[80] *See Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357, 381-82 (1997) (deferring to the district court's assessment that a fixed buffer zone around an abortion provider was necessary to keep entrances clear in light of the defendants' past conduct in the buffer zone).

in a manner that does not permit arbitrary and discriminatory enforcement.'"[81] Under the first requirement—the fair warning requirement—a law must give an ordinary person notice of what is prohibited.[82] And under the second requirement, which prohibits arbitrary and discriminatory enforcement, a law must provide explicit standards for the law's application; "[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis . . . ."[83]

Because Martinez was charged with violating provision sixteen for making VC hand gang signs and wearing VC gang clothing, we limit our fair-warning analysis to the actual application of provision sixteen in this case.[84] We conclude that provision sixteen was sufficiently clear so that Martinez could understand that VC hand gang signs and clothing were prohibited conduct. Martinez, determined to be an active VC gang member by the district court judge (a fact he has never contested and ultimately admitted when pleading guilty), must have been aware of the gang's identifying hand signs and clothing and therefore the precise conduct that he was charged with, and convicted of, violating.[85] Indeed, we note

[81] *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007) (quoting *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006)).

[82] *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[83] *Id.* at 108-09.

[84] *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2719 (2010) ("[E]ven to the extent a heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice.").

[85] *See id.*

that the arrest report in cause number 39396-F reflects that Martinez told the arresting officer that the color of clothing that he was wearing were "his gang colors." Thus, we find that his vagueness challenge to the gang-clothing prohibition to be somewhat disingenuous.

We also reject the notion that provision sixteen permitted arbitrary and discriminatory enforcement. We regularly permit police officers to rely on their training and experience in making warrantless arrests,[86] and we have recognized the ability of law enforcement to know and determine gang affiliation by observing an individual's clothing or tattoos.[87] We therefore conclude that, under these circumstances, it is reasonable to defer to the district court judge's determination that law enforcement patrolling the defined VC Safety Zone,

---

[86] *See McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003) ("This court has previously upheld arrests . . . when police officers personally observed behavior that was not overtly criminal but when coupled with the officers' prior knowledge produced probable cause."); *Gonzales v. State*, 648 S.W.2d 684, 687 (Tex. Crim. App. 1983) ("We conclude that under the facts of this case the officers' observations of appellant and his attempt to conceal the balloons in his mouth, coupled with their knowledge of the use of balloons to carry heroin in the manner observed, were sufficient to authorize appellant's immediate arrest and the contemporaneous seizure of the balloons."); *cf. Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002) ("Although it cannot be presumed that everyone is capable of identifying marihuana by smell, a witness who is familiar with the odor of marihuana smoke through past experiences can testify as a lay witness that he or she was able to recognize the odor.").

[87] *See e.g., Conner v. State*, 67 S.W.3d 192, 201-02 (Tex. Crim. App. 2001) (police officer testified that "one of appellant's tattoos might have some connection with gang membership"); *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995) ("Officer Griego revealed that he had personally witnessed appellant wearing the gang colors and clothing which indicated appellant's membership in the Crips gang.").

based on their training and experience,[88] would be able to recognize the hand gang signs and clothing associated with gangs in the area and to apply the provision in a non-arbitrary and non-discriminatory fashion.[89]

We conclude that the court of appeals was correct in holding that provision sixteen was not unconstitutionally vague.

### Conclusion

For the reasons given above, we affirm the court of appeals's judgment.

DATE DELIVERED: October 6, 2010
PUBLISH

---

[88] *See* TEX. CODE CRIM. PROC. ANN. art. 61.02 (providing for law enforcement agencies to collect data on those involved in gangs for inclusion in local or regional intelligence database); TEX. CODE CRIM. PROC. ANN. art. 61.10 (establishing Texas Violent Gang Task Force); TEX. CODE CRIM. PROC. ANN. art. 61.11 (providing for the attorney general to establish gang resource system to distribute information about Texas gangs); *cf. Wiede v. State*, 214 S.W.3d 17, 27 (Tex. Crim. App. 2007) ("Although probable cause is viewed objectively, Trooper McGuairt's testimony about his training and his opinion concerning the contents of the plastic bag provided a basis from which the trial judge could have reasonably inferred that Trooper McGuairt possessed specific knowledge that drugs are commonly packaged, carried, or transported in plastic bags."); *Davis v. State*, 202 S.W.3d 149, 156-57 (Tex. Crim. App. 2006) (finding it reasonable for a magistrate to infer an officer's prior experience with methamphetamine when the officer stated that he smelled an odor associated with the manufacture of methamphetamine when the officer did not offer any information about his previous experience or encounters with such an odor).

[89] *See Schenck*, 519 U.S. at 381-82 (deferring to the district court's assessment that a fixed buffer zone around an abortion provider was necessary to keep entrances clear in light of the defendants' past conduct in the buffer zone); *see also Hill v. Colorado*, 530 U.S. 703, 733 (2000) (recognizing that enforcing a law always requires some degree of discretion by law enforcement and that a degree of judgment is acceptable at times).