IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1846-11





 

VICTOR MARTINEZ GARCIA, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


SAN PATRICIO COUNTY





 Alcala, J., delivered the opinion of the Court in which Keller, P.J., and 
Price, Womack, Keasler, Hervey, and Cochran, JJ., joined. Womack, J., filed a
concurring opinion in which Keller, P.J., joined. Johnson, J., filed a concurring
opinion. Meyers, J., did not participate.


O P I N I O N 



 The State's petition for discretionary review asks this Court to determine whether the
common-law requirement that the State exercise due diligence in prosecuting a motion to
revoke community supervision has survived codification of that matter. The court of appeals
ruled in favor of appellant, Victor Martinez Garcia, by applying the common-law due-diligence requirement, which the State now argues has been superseded by statute. See
Garcia v. State, No. 13-10-00284-CR, 2011 Tex. App. LEXIS 5407, *8 (Tex. App.--Corpus
Christi July 14, 2011) (not designated for publication). We conclude that the common-law
requirement has been replaced by Texas Code of Criminal Procedure Article 42.12, § 24,
which we refer to as the "due-diligence statute." See Tex. Code Crim. Proc. art. 42.12, §
24. Furthermore, the due-diligence statute applies to only two alleged community-supervision
violations: "failure to report to a supervision officer as directed or to remain within a
specified place." Id. Because the court of appeals analyzed the case under common law
instead of under the statute, it erred. We reverse.

I. Background

 A. Revocation Hearing

 The State filed a motion to revoke appellant's community supervision, and a capias
issued while he was still on community supervision. Two years after his community
supervision expired, appellant was arrested on the capias and a hearing on the motion was
held. At the hearing, appellant fell on his sword. He pled true to the violations alleged in the
motion, stipulated to the evidence, and signed a judicial confession admitting the four
violations alleged in the motion: (1) failure to complete required substance-abuse treatment;
(2) withdrawal from the treatment facility without judicial release; (3) failure to return to the
treatment facility from a pass; and (4) failure to timely report a change of address. Appellant
did not object to the admission of this evidence, and the trial court found the allegations true. 

 In deciding appellant's sentence, the trial court considered the pre-sentence
investigation report. The report indicated that, after the capias had issued but before it was
executed, appellant had been arrested on an unrelated charge and incarcerated for two years. 
Defense counsel then argued, for the first time, that the case should be dismissed due to the
State's delay in executing the capias. Counsel explained that he did not know why appellant
was not allowed to respond to the State's revocation allegations while he was incarcerated
on the unrelated charge, or why appellant was released from prison while the revocation
capias was pending. Unpersuaded, the trial court revoked appellant's community supervision
and sentenced him to seven years in prison.

 B. The Direct Appeal and State's Petition for Discretionary Review 

 The court of appeals reversed the trial court's judgment and remanded the case with
directions to dismiss the motion to revoke. See Garcia, 2011 Tex. App. LEXIS 5407, at *8-9. 
It held that, because appellant raised due diligence at the revocation hearing, common law
required the State to show that it had exercised due diligence in prosecuting its motion. Id.
at *4 (citing Brecheisen v. State, 4 S.W.3d 761, 763 (Tex. Crim. App. 1999)). The court
determined that defense counsel's closing arguments satisfied appellant's burden to raise the
due-diligence defense and concluded that no evidence explained the State's failure to timely
execute the capias. Id. at *6-7. 

 The State filed a motion for rehearing, which the court of appeals denied without
opinion. Garcia v. State, No. 13-10-00284-CR, 2011 Tex. App. LEXIS 10280 (Tex.
App.--Corpus Christi Nov. 10, 2011) (not designated for publication). The State's motion
and appellant's response agreed that the court of appeals erred by applying common law
instead of the due-diligence statute. Appellant, however, claimed that he had met his
evidentiary burden under that statute.

 The State filed a petition for discretionary review raising six grounds, and we granted
five, but reach only two: the third and fourth grounds for review. The State's third ground
asks, "Has the affirmative defense provided for by article 42.12 section 24 of the Code of
Criminal Procedure eliminated the common law due diligence defense?" We answer that
question in the affirmative and, therefore, reach the State's fourth ground, which asks, "Is
the failure to successfully complete residential treatment by withdrawing from the facility
without written release from the trial court a 'failure . . . to remain in a specified place' under
article 42.12 section 24?" In that ground, the State argues that, because appellant's
community supervision was revoked for violations other than the two violations enumerated
in the statute, the due-diligence defense was unavailable to him. We agree. Because we
resolve its petition on these grounds, we do not reach the State's first, fifth, and sixth grounds
for review. (1)

II. Analysis

 A. The Common-Law Due-Diligence Defense

 At common law, a trial court's jurisdiction over a motion to revoke did not extend
beyond the expiration of a defendant's community supervision unless the motion had been
filed and a capias or arrest warrant issued within the supervision period. Peacock v. State,
77 S.W.3d 285, 287 (Tex. Crim. App. 2002). It was a defense to revocation that, in
executing the capias or warrant and securing a hearing on its motion, the State had failed to
exercise "due diligence," which required "reasonable investigative efforts . . . to apprehend
the person sought." Id. at 287-88. The burden was on the defendant to raise the defense, but
once he did so, the burden shifted to the State to prove due diligence by a preponderance of
the evidence. Id. at 288; Brecheisen, 4 S.W.3d at 763. Neither the extension of the trial
court's jurisdiction nor the due-diligence defense had a statutory basis. Peacock, 77 S.W.3d
at 289; see also Stover v. State, 365 S.W.2d 808, 809 (Tex. Crim. App. 1963). This common-law scheme, however, was recognized by this Court and "followed by the various lower
courts for nearly forty years." Peacock, 77 S.W.3d at 289.

 B. Statutory Amendments Eliminated Common Law 

 We conclude that the 2003 statutory amendments to Texas Code of Criminal
Procedure Article 42.12 replaced the common-law due-diligence scheme. 

 1. Applicable Law for Interpreting Statutes

 When interpreting statutes, a court must "seek to effectuate the 'collective' intent or
purpose of the legislators who enacted the legislation." Boykin v. State, 818 S.W.2d 782, 785
(Tex. Crim. App. 1991). Toward that end, a court must focus its "attention on the literal text
of the statute in question and attempt to discern the fair, objective meaning of that text at the
time of its enactment." Id. However, when application of a statute's plain language would
lead to absurd consequences, or when "the language is not plain but rather ambiguous," a
court may consider extra-textual factors such as legislative history of the statute. Id. at 785-86. In this context, ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous when
it permits only one reasonable understanding. Mahaffey v. State, 364 S.W.3d 908, 913 (Tex.
Crim. App. 2012).

 2. Plain-Language Analysis of Due-Diligence Statute 

 In 2003, the Legislature amended Texas Code of Criminal Procedure Article 42.12
by adding Sections 21(e) and 24. See Act of May 30, 2003, 78th Leg., R.S., ch. 250, §§ 2,
3, effective June 18, 2003. Section 21(e) expressly extends the trial court's jurisdiction over
revocation proceedings beyond the expiration of a defendant's community supervision so
long as, before that time, the State has filed a motion to revoke, continue, or modify
community supervision and a capias has issued. (2) See Tex. Code Crim. Proc. art. 42.12, §
21(e). That section, therefore, effectively codified the corresponding common-law
requirement. Compare id. with Peacock, 77 S.W.3d at 287. It did not, however, codify the
common-law due-diligence defense.

 Instead, the Legislature added Section 24, which expressly created a due-diligence
affirmative defense to revocation. Tex. Code Crim. Proc. art. 42.12, § 24. It states,

For the purposes of a hearing under Section 5(b) or 21(b), it is an affirmative
defense to revocation for an alleged failure to report to a supervision officer
as directed or to remain within a specified place that a supervision officer,
peace officer, or other officer with the power of arrest under a warrant issued
by a judge for that alleged violation failed to contact or attempt to contact the
defendant in person at the defendant's last known residence address or last
known employment address, as reflected in the files of the department serving
the county in which the order of community supervision was entered.


Id. This provision is more favorable to the State than was the common-law defense in three
ways. First, it makes due diligence an affirmative defense, thereby shifting the burden of
proof to the defendant. Id. Second, it limits the State's due-diligence duty to contacting or
attempting to contact the defendant at his last-known residential or employment addresses,
whereas common law required reasonable investigative efforts to apprehend the defendant.
Compare id. with Peacock, 77 S.W.3d at 288. Third, it applies to only two revocation
allegations: failure to report to an officer as directed, and failure to remain within a specified
place. Tex. Code Crim. Proc. art. 42.12, § 24. By contrast, the common-law due-diligence
requirement applied to all revocation allegations. See Peacock, 77 S.W.3d at 288. 

 It is plain that the Legislature intended to eliminate the common-law defense as to the
two allegations listed in the due-diligence statute. See Tex. Code Crim. Proc. art. 42.12, §
24; see also Pena v. State, 201 S.W.3d 764, 765 (Tex. Crim. App. 2006) (holding that
Section 24, not common law, "applie[d] to this case"). But it is, perhaps, less plain whether
the Legislature intended to eliminate the common-law due-diligence defense entirely. One
could reasonably argue that common law still applies to revocation allegations not listed in
the statute. One could also reasonably argue, however, that common law has been entirely
statutorily superseded and that the due-diligence statute is the only due-diligence law
applicable to revocation proceedings. Because these provisions are subject to more than one
reasonable interpretation, they are ambiguous and require extra-textual analysis. See Boykin,
818 S.W.2d at 785-86; see also Tex. Gov't Code § 311.023.

 3. Extra-Textual Analysis

 Examination of applicable extra-textual factors reveals that the Legislature intended
to wholly eliminate the common-law due-diligence defense by its passage of Sections 21(e)
and 24. See Tex. Code Crim. Proc. art. 42.12, §§ 21(e) and 24.

 a. Legislative History and Policy Considerations

 Less than a year after Peacock, in which this Court explained the long-standing,
common-law due-diligence defense, legislators proposed the bill amending Article 42.12. See
Peacock, 77 S.W.3d at 289 (noting that "the due diligence defense has no statutory basis,"
but is deeply rooted in common law); House Research Organization, Bill Analysis,
Tex. H.B. 1634, 78th Leg., R.S. (April 24, 2003). Supporters of the bill expressed concern
regarding the burden that the common-law doctrine placed on the State to exercise due
diligence and the resulting windfall to absconding defendants: 

Current law rewards offenders who abscond by imposing a duty on the state
to exercise due diligence in apprehending a defendant who has violated the
terms of community supervision. The state is penalized if it does not make
continual efforts to locate and arrest the absconder, because either the trial
court will deny the motion to revoke or the appellate court will overturn the
revocation. [The bill] would ensure that a defendant is not rewarded for
absconding and thereby escaping the court's jurisdiction.


Id. at 3 (citing Stover, 365 S.W.2d at 808). Supporters described the common-law
requirement as "costly and burdensome" in light of limited law-enforcement resources. They
also viewed the common-law requirements as posing a risk to public safety by preventing law
enforcement "from bringing [absconders] to justice simply because the State does not have
the resources to exercise due diligence." Id. An earlier-proposed version of the bill continued
to impose a general but "simplified" due-diligence requirement on the State to "help counties
preserve their limited resources," but that version did not pass. Id. 

 Opponents of the legislation observed that entirely dispensing with the due-diligence
requirement might result in defendants being called to answer for violations long after they
were allegedly committed, making it more difficult to defend against those allegations. They
observed: 

 It would be unfair to drag a defendant to court 10 years after the defendant's
probation expired if the defendant . . . mistakenly believed that he or she had
completed probation successfully. With the passage of time, it becomes more
difficult for a defendant to locate witnesses and other evidence to defend
against a revocation.


House Research Organization, Bill Analysis at 4, Tex. H.B. 1634, 78th Leg., R.S.
(April 24, 2003). (3) 

 The legislative history reveals that the Legislature intended to replace the common-law requirement with the due-diligence statute to reallocate the burden of proof in those
instances in which the State has timely alleged violations but has not arrested the defendant
before the community-supervision period has expired. Furthermore, the history suggests that
the legislation was intended to enhance the public's safety by permitting the government
greater leeway to pursue those violators who have failed to comply with their conditions of
community supervision.

 In passing the due-diligence statute, the Legislature apparently rejected the policy
arguments that favored the more expansive common-law due-diligence requirements, opting
instead for the much more limited statutory due-diligence requirement. We may not override
the Legislature's intent in favor of countervailing policy considerations. See Boykin, 818
S.W.2d at 785; Martinez v. State, 323 S.W.3d 493, 501 (Tex. Crim. App. 2010) (the
Legislature, not the judiciary, "declares the public policy of the state").

 b. Post-Amendment Judicial Interpretation

 The courts of appeals that have analyzed these provisions have construed them as
wholly dispensing with the common-law defense, including the court of appeals in the
present case. See Pena v. State, No. 13-03-648-CR, 2004 Tex. App. LEXIS 7689, *6 (Tex.
App.Corpus Christi Aug. 26, 2004) (not designated for publication), reversed by 201
S.W.3d 764. In Pena v. State, the court of appeals initially held that "the State failed to carry
its burden to show it made a diligent effort to apprehend" Pena under the common-law due-diligence standard. See Pena, 2004 Tex. App. LEXIS 7689, at *7-8 (citing Peacock, 77
S.W.3d at 289). This Court reversed, holding that the newly added due-diligence statute
applied to Pena's case. Pena, 201 S.W.3d at 765 (citing Tex. Code Crim. Proc. art. 42.12,
§ 24). On remand, the lower court concluded that the 2003 amendments to Article 42.12
eliminated any due-diligence defense as to allegations not enumerated in the due-diligence
statute. Pena, 2007 Tex. App. LEXIS 9006, at *4-6 (internal citations omitted). (4) Our
interpretation of the 2003 amendments, therefore, is consistent with that of the courts of
appeals that have analyzed the codification of the due-diligence defense.

 In light of these extra-textual factors, we conclude that, by its 2003 amendments to
Article 42.12, the Legislature eliminated the common-law due-diligence defense and
replaced it with the limited affirmative defense provided in the due-diligence statute. See
Tex. Code Crim. Proc. art. 42.12, § 24. The court of appeals, therefore, erred in analyzing
this case under common law. We sustain the State's third issue.

 C. Due-Diligence Defense Does Not Apply to All Allegations In This Case

 Having determined that the court of appeals erroneously analyzed the case under now-defunct common law, we must next decide whether remand is necessary. We conclude that
it is not. As discussed, the due-diligence defense is limited to "failure to report to a
supervision officer as directed or to remain within a specified place." Tex. Code Crim.
Proc. art. 42.12, § 24. However, the trial court's revocation of appellant's community
supervision was also based on a different violation, namely, failure to complete the required
substance-abuse treatment. Therefore, even assuming that the State did not exercise due
diligence in executing the capias, the trial court did not abuse its discretion because no due-diligence defense is available with respect to failure to complete substance-abuse treatment,
and proof of a single violation will support revocation. See Moore v. State, 605 S.W.2d 924,
926 (Tex. Crim. App. 1980) (one sufficient ground will support revocation order). We,
therefore, sustain the State's fourth issue. 

III. Conclusion

 The trial court did not abuse its discretion in revoking appellant's community
supervision. We reverse the judgment of the court of appeals and reinstate the judgment of
the trial court.


Delivered: December 12, 2012

Publish
1. 
[1] The State's grounds that we do not reach ask,

1. Does a plea of true to an allegation in a motion to revoke community supervision
effectively waive any subsequently raised defenses to revocation?

5. Is the failure to report a change of address within two working days a "failure to
report to a supervision officer as directed" under article 42.12 section 24?

6. Is a defense attorney's unsworn argument sufficient to satisfy his client's burden
of proof under article 42.12 section 24 such that revocation was an abuse of
discretion in this case?
2. Section 21(e) states, 


 A court retains jurisdiction to hold a hearing under Subsection (b) and to revoke,
continue, or modify community supervision, regardless of whether the period of
community supervision imposed on the defendant has expired, if before the
expiration the attorney representing the state files a motion to revoke, continue, or
modify community supervision and a capias is issued for the arrest of the defendant. 


Tex. Code Crim. Proc. art. 42.12, § 21(e). The Legislature also added Section 5(h), which expressly
extends the trial court's jurisdiction over revocation proceedings beyond the expiration of deferred-adjudication community supervision. Id. § 5(h).
3. We note that, because the State bears the burden of proof at revocation proceedings, it is
arguably more disadvantaged by delay and, therefore, has a strong incentive to timely prosecute its
motions to revoke.
4. See also Nurridin v. State, 154 S.W.3d 920, 924 (Tex. App.Dallas 2005, no pet.); Wheat
v. State, 165 S.W.3d 802, 807 (Tex. App.Texarkana 2005, pet. ref'd); Horton v. State, No.
10-09-00258-CR, 2010 Tex. App. LEXIS 3828, *5 (Tex. App.Waco May 19, 2010, pet. ref'd) (not
designated for publication); Clark v. State, No. 12-09-00394-CR, 2010 Tex. App. LEXIS 9125, *6
(Tex. App.Tyler Nov. 17, 2010, no pet.) (not designated for publication); Moss v. State, No.
07-04-0330-CR, 2005 Tex. App. LEXIS 3590, *6-7 (Tex. App.Amarillo May 11, 2005, no pet.)
(not designated for publication).